THE PENNSYLVANIA COMPANY

*v.*

THE KENWOOD BRIDGE COMPANY.

*Opinion filed December 22, 1897—Rehearing denied February 2, 1898.*

1. CARRIERS—*fact that shipper loads his cars does not make him the carrier's agent for that purpose.*  The fact that a shipper loads his cars at his manufacturing establishment for his own convenience, instead of delivering the freight at the station for loading, does not make him the agent of the carrier, so as to make the latter responsible for damages resulting from improper loading.

2. SAME—*carrier accepting goods in unusual condition, as a favor to shipper, may rely on his statements.*  A carrier accepting for carriage, as a favor to the shipper, iron trusses bolted together, in which condition it is not bound to receive them, upon the shipper's representation the trusses, when loaded, would be of a certain height, may rely upon such representation, and is not liable for damages resulting from the shipper's misrepresentation as to such height.

3. EVIDENCE—*when declarations of a station agent are not admissible against railroad company.*  Declarations of a station agent as to why a car loaded at his station was not inspected by the railroad company before its acceptance for transportation are not admissible against the company, where the agent was not employed as agent at that station until some time after the transaction to which his declarations relate.

4. SAME—*what evidence competent in suit by shipper against carrier.*  Where, in a suit by a shipper for damages to certain trusses from their being too high to pass under a certain bridge, it is claimed by the shipper that the carrier might have taken another route and avoided the bridge, the carrier may show that at that time it had no arrangement to run over other carrier's lines, and had no track of its own except the one on which the bridge was located.

MAGRUDER, J., dissenting.

*Pennsylvania Co.* v. *Kenwood Bridge Co.* 69 Ill. App. 145, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. C. G. NEELY, Judge, presiding.

GEORGE WILLARD, for appellant.

BARKER & CHURCH, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit to recover the cost of repairing steel trusses which were broken and injured while being carried by appellant on its railroad from Grand Crossing, in Cook county, to South Chicago, in the same county, and on trial obtained a verdict for $668.62, which was $109.28 more than the cost of the repairs sued for. Appellee remitted said excess, and judgment was entered for $558.84,—the amount of the claim.  The Appellate Court for the First District affirmed the judgment and granted a certificate of importance, in pursuance of which the case is brought to this court, and appellant complains that improper evidence was admitted and improper instructions given for appellee, and proper evidence offered by appellant excluded.

In December, 1892, plaintiff had its works at Grand Crossing, and was about to make and ship to Schailer & Schniglau, at South Chicago, in the care of the Illinois Steel Company, certain trusses.  If they were shipped in parts it would be necessary to rivet them together after they arrived at South Chicago, which would make an additional expense. If they were put together it would make a load higher than defendant would ship, and plaintiff, desiring to ship them in that way to save the added expense, applied to the station agent at Grand Crossing to see if permission could be obtained to ship in that way. The agent said that he could not permit it and had no

right to do so.   He was then asked to apply to his supe-
riors for permission, and for the purpose of complying
with that request he inquired what the height would be.
So far there was no dispute as to the facts, but there was
a controversy as to what representation was made con-
cerning the height.   The station agent testified that Paul
Willis, the secretary and engineer of the plaintiff, pointed
to a truss lying on the ground and said it would be the
same height as that one; that Willis proposed to measure
it, and took a steel tape and held one end and the sta-
tion agent held the other, and that they measured it and
found it was just fifteen feet high.   Willis contradicted
this testimony, and said that he showed the station agent
a drawing of the trusses made on a scale of half an inch
to the foot, but did not tell the height.   He admitted, how-
ever, on cross-examination, that the station agent asked
for definite dimensions of the trusses to be shipped, and
that thereupon he and the agent measured with a steel
tape-line a truss which was lying there in the yard.   The
truss that was measured was fifteen feet high, and the
agent took a memorandum of the height and wrote for
the permission.   After receiving a reply he told plaintiff
that the trusses would be accepted.   Plaintiff was accus-
tomed to load the cars in its own yard, where it had a
switch, and the defendant hauled them out to its road.
The car in question was loaded in that way with trusses
sixteen feet and four inches high from the platform of
the car.   According to its custom the railroad company
hauled the car from the yard, and in taking it to South
Chicago in its train the trusses were bent and broken in
an attempt to go through the Calumet river bridge.   The
copy of the account sued on, annexed to the declaration,
was for repairing trusses wrecked in the Calumet bridge,
and it is plain from the record that it was conceded on
all hands at the trial that the damage was done by the
height of the trusses at the Calumet bridge.

The defendant was not bound to accept for transportation such property as these trusses. It did not, in general, undertake to carry such property and was not prepared to transport anything of that kind. It is conceded that it was not bound to do so, and this was well understood by the plaintiff when the permission was asked as a favor, to save expense to plaintiff. The evidence for the defendant was, that the trusses were wrongfully loaded by the plaintiff to the height of sixteen feet and four inches above the platform of the car, after having represented to the defendant that they would be only fifteen feet in height. When the favor was asked for and the station agent inquired for the definite dimensions and height of the trusses, he was entitled to a fair and honest disclosure, and information which he could give to his superiors. The president of plaintiff testified that the station agent agreed to communicate with one Law, a division superintendent of the road, for the permission, and that the witness told the agent that he could not tell him what the height of the trusses would be. The engineer, Willis, who drew the plans and knew the facts, according to his account did not give the station agent any height, but referred him to his drawings, and told him that he could scale the drawings if he wanted to. If the testimony for defendant was true there was a distinct misrepresentation. It has always been held that a carrier is not responsible for a loss or injury resulting from the misconduct, fraud or deceit of the owner. (*Chicago and Aurora Railroad Co. v. Thompson*, 19 Ill. 578; *Chicago and Alton Railroad Co. v. Shea*, 66 id. 471; Elliott on Railroads, sec. 1491.) In this case the height of the trusses was the direct and proximate cause of the injury. If the permission was given to load them at a height of fifteen feet, so that they would pass under wires and bridges on the road, and they were loaded at a greater height, so that they could not pass under a certain bridge, it would conflict with the plainest principles of justice to permit the plaintiff to recover for

the injury resulting from its own fault, unless the defendant had knowledge of the fact. There was no evidence of such knowledge.

But it is insisted that the defendant was bound to inspect the car before taking it on its road, and ascertain the height of the trusses, and to show a fault on the part of defendant in that respect the court permitted in evidence proof that one Kertz, who at the time of the shipment was a clerk for defendant at another station and knew nothing about the occurrence, stated two or three weeks afterward that the car was not inspected before it went out, because the inspector was drunk. The shipment was December 20, 1892, and this man Kertz did not become defendant's agent at Grand Crossing until January 7, 1893. It was after that time that the statement was made. It is a well established rule that the declaration of an agent or servant can only be admitted in evidence if, at the time of making the declaration, he is doing something about the business of his principal. It is because the declaration is a verbal act and part of the *res gestœ* that it is admissible at all, so that if what the agent did is admissible as evidence, what he said about the act while he was doing it is also admissible, but not otherwise. (1 Greenleaf on Evidence, sec. 113; 1 Phillips on Evidence, 201; *Jenks* v. *Burr*, 56 Ill. 450; *Ohio and Mississippi Railway Co.* v. *Porter*, 92 id. 437; *Phenix Ins. Co.* v. *LaPointe*, 118 id. 384; *Summers* v. *Hibbard & Co.* 153 id. 102). In this case Kertz did not even know anything about the supposed facts.

One of the plaintiff's claims seems to have been that the defendant might have taken the car to the steel company's works by some other route, without going through the Calumet bridge, and it is shown that it afterwards took them, when repaired, by some other way. There was no evidence that the defendant had any right, at the time of the shipment, to run over a switch into the yard of the steel company without going over the bridge, and

the defendant proved that it had no arrangement at that time by which it was permitted to run cars from its line to such works of the steel company. The court refused to permit the defendant to prove further that it did not own or operate any track at that time leading from its main line into said works. The evidence was competent, and should have been admitted.

The second instruction given at the request of plaintiff is as follows: .

"You are instructed that if you believe, from the evidence, that the car in question was loaded by the plaintiff and received by the defendant so loaded, that then the defendant made the plaintiff its agent for the purpose of loading the car, and it became the duty of the defendant to ascertain that the car was properly loaded when the same was received by it."

The instruction was wrong, as applied to this case. If the duty rests primarily upon the carrier to load and unload freights delivered at its stations or warehouses, there is surely no reason why the shipper may not, by contract express or implied, assume that duty. In this case it was the custom of plaintiff, instead of bringing its freight to the station, to have cars taken into its yard and load them there. Defendant never assumed the duty of loading cars for plaintiff at that place, but the understanding was that plaintiff would load them. Whether this was done to save charges, or for convenience to avoid the labor and expense of delivery at the station, or for whatever reason, the loading was not done by plaintiff as the agent of defendant. The instruction made the defendant responsible for the act of the plaintiff in loading the car so that it would not go through the bridge, on the ground of agency, although the jury might believe that the loading was wrongful. It also required an inspection at all events, regardless of the question whether the trusses were to be only fifteen feet high, or whether the circumstances were such that defendant had

a right to rely upon an understanding that they would be of that height, and not measure them to see whether the understanding had been disregarded.    The instruction was wrong.

The sixth instruction given for the plaintiff was as follows:

"The jury are instructed that if, after the car was loaded, an agent or employee of the defendant saw it as it was loaded and made no protest as to the manner of its having been loaded, and if the jury believe, from the evidence, that the goods were not delivered in as good order as when received by the defendant, ordinary wear and tear excepted, and that the plaintiff was injured and has sustained damage thereby, then the plaintiff is entitled to recover, unless the jury believe, from the evidence, that the injury resulted from the act of God or the public enemy."

The trainmen unquestionably saw the car.  They could not have hauled it without seeing it, and this instruction was equivalent to a direction for a verdict regardless of all defenses.    It ignored the alleged agreement as to the height to which the car was to be loaded; and under it, if an agent or employee of the defendant, whether fireman, section-hand or laborer, saw the car and made no protest, defendant would be liable, regardless of the question whether the difference in height would be noticeable to such employee and whether inspection was within the scope of his employment.    It required every employee of defendant to know the exact height of the trusses and the height of the Calumet bridge, and was clearly wrong.

For the errors indicated in admitting and rejecting evidence and giving instructions, the judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.