GULF, WEST TEXAS & PACIFIC RAILWAY COMPANY v. DAN WITTNE-
BERT.

No. 1798. Decided February 26, 1908.

### 1.—Negligence—Carrier—Inspection of Car—Dangers in Unloading.

No duty rests on a railway receiving for transportation a loaded car from a connecting line, to inspect the manner of its loading so as to ascertain whether the freight was so arranged as to be safe to persons who might be called on by the consignee to remove it from the car. Sykes v. St. Louis & S. F. R. Co., 77 S. W. Rep., 723, distinguished. (Pp. 373–376.)

### 2.—Same.

When the consignor loads freight upon a car or packs articles for shipment, the carrier which receives the car as loaded or the package as prepared is not liable for damages to the property which arise from defect in the loading or packing; and the same principle should, it seems, apply to injuries to the consignee in unloading due to such cause. (Pp. 374, 375.)

### 3.—Same—Case Stated.

A railway received from a connecting line and delivered to the consignee a tank car loaded with fuel oil, and a servant of the latter, unscrewing a metal cap from the end of the discharge pipe of the car, for the purpose of unloading by connecting it with a pipe leading to the consignee's storage reservoir was injured by the flow of oil. A valve inside the pipe which should have been closed to prevent the escape of the oil till the attachment was made was operated by a lever in the dome of the tank car, and whether this was open or closed could only be discovered by unscrewing the metal covering on the dome of the car. Held that the railway was not liable to the injured person for failing to make such inspection to determine whether the valve was closed. (Pp. 372–376.)

Error to the Court of Civil Appeals for the First District, in an appeal from DeWitt County.

Wittnebert sued the railway company for personal injuries and obtained judgment, which was affirmed on defendant's appeal. Appellant thereupon obtained writ of error.

*Proctors, Vandenberg & Crain,* for plaintiff in error.—In the absence of a duty imposed by law upon a person to perform a certain act or acts, failure on his part to perform such act or acts will not constitute actionable negligence. Texas Central Ry. Co. v. Harbison, 85 S. W. Rep., 1138; 88 S. W. Rep., 414; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60; Missouri, K. & T. Ry. v. Edwards, 90 Texas, 65; Case Threshing Machine Co. v. Burns, 86 S. W. Rep., 65; Proctor v. San Antonio Street Ry., 62 S. W. Rep., 939; Aves v. Ry., 65 Atl. Rep., 261; Ry. Co. v. Atlantic Ref. Co., 49.

There is no duty imposed by law upon a railway company, upon receiving a loaded car from another railway company, to ascertain, by inspection prior to delivery to consignee, whether or not the same is properly loaded, particularly where the fact that same may be improperly loaded is not apparent from the exterior of the car. Galveston, H. & S. A. Ry. Co. v. Parish, 93 S. W. Rep., 683, and cases cited; Missouri, K. & T. v. Chambers, 43 S. W. Rep.,

1090; Alves v. New York, N. H. & H. Ry. Co., 65 Atl. Rep., 261; Thompson v. Great Northern Ry. Co., 19 Am. and Eng. R. R. cases (New Series), 424; Baker v. Louisville Terminal Company, 61 S. W. Rep., 1030.

The only duty of inspection owed by, or imposed upon, a railway company of loaded cars received by it from another road is to cause a reasonable inspection to be made of the exterior thereof, and of such possible interior defects as might be suggested by such exterior inspection. Same authorities.

Even if a car is not inspected, when received loaded from another railway company prior to delivery to consignee, in the manner required by law, yet if the inspection imposed by law would not have discovered a defect in the car or in the manner in which it was loaded, and which defect was the cause of injury to a person unloading same, there would be no liability upon the part of the carrier making delivery to consignee. Same authorities.

Where in a suit for damages, against a railway company, by a servant of the consignee, by reason of personal injuries sustained by said servant while attempting to unload a tank car loaded with fuel oil, by reason of the fact that the safety valve in said car was not closed, there was no greater duty imposed upon defendant to ascertain whether said valve was closed, or to close same, or to warn plaintiff of such fact than there was upon plaintiff to ascertain said fact and close said valve when it appears from the evidence: That said car was not loaded by defendant; that same was received by defendant loaded from another road; that the fact that said valve was not closed was not ascertainable from a proper outside inspection, and was not, in fact, known to defendant; that it was not the custom of defendant to ascertain whether or not the valve in loaded oil cars received by it from other roads were closed, and plaintiff had no reason from any rule or custom known to him on defendant's part to inspect said valves, to rely on such inspection; that plaintiff was an experienced machinist and fully cognizant with the construction of the car, and knew the consequence of attempting to unload said car with the valve open; that plaintiff did not know whether the valve was open or closed when he attempted to unload said car, and under such circumstances the duty was imposed by law upon plaintiff to ascertain whether the valve was closed, and his failure to so do would constitute negligence, as a matter of law, upon his part. Galveston, H. & S. A. Ry. Co. v. Parish, 93 S. W. Rep., 383, and cases cited; Missouri, K. & T. Ry. Co. v. Chambers, 43 S. W. Rep., 1090; Alves v. New York, N. H. & H. Ry. Co., 65 Atlantic Rep., 261; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60; Texas Central Ry. Co. v. Harbison, 85 S. W. Rep., 1138; Gulf, W. T. & P. Ry. Co. v. Smith, 83 S. W. Rep., 719; Houston & T. C. Ry. Co. v. Scott, 62 S. W. Rep., 1077; Mexican Central Ry. Co. v. Shean, 18 S. W. Rep., 151; Galveston, H. & S. A. Ry. Co. v. Farmer, 11 S. W. Rep., 156; Western Ry. of Alabama v. Harwell, 97 Ala., 341; 11 So. Rep., 781; 5 Thompson on Negligence, sec. 6572, pp. 979-980.

*Lackey & Lewright,* for defendant in error.—It is the duty of a railroad company, such as appellant, to have "foreign cars" coming loaded upon its line of road inspected with a reasonable degree of care, to ascertain whether or not such cars are in proper order and safely loaded; this duty applies not only as to trainmen about to handle such cars en route, but also to all persons who may be expected, in the natural order of events, to assist in unloading such cars. This duty is absolute, continuing and nondelegable. Texas & N. O. Ry. Co. v. Conway, 98 S. W. Rep., 1073; Galveston, H. & S. A. Ry. Co. v. Parish, 93 S. W. Rep., 682; S. P. Co. v. Winton, 66 S. W. Rep., 481; Missouri, K. & T. Ry. v. Chambers, 43 S. W. Rep., 1090; Galveston, H. & S. A. Ry. Co. v. Nass, 59 S. W. Rep., 870, 57 S. W. Rep., 910; Eddy v. Prentice, 27 S. W. Rep., 1063; St. Louis, A. & T. Ry. Co. v. Putnam, 20 S. W. Rep., 1002; Baltimore & O. Ry. Co. v. Mackey, 157 U. S., 91; Texas & P. Ry. v. Archibald, 170 U. S., 669; Am. & Eng. Ency. Law (2d ed.), vol. No. 20, p. 80; Dewey v. Detroit, T. H. & M. Ry. Co., 52 N. W. Rep., 942 (citing and briefly commenting on Mexican Cent. Ry. Co. v. Shean, 18 S. W. Rep., 151); Atchison, T. & S. F. Ry. Co. v. Seeley, 54 Kansas, 21 (37 Pac., 104); Welch v. Maine Central Ry. Co., 25 L. R. A. (1st series), 658; Sheltrawn v. Michigan Central Ry. Co. (Mich.), 87 N. W. Rep., 893; Shearman & Red. on Negligence, sec. 12; Baltimore & P. Ry. Co. v. Jones, 95 U. S., 441; Kelly v. Mich. Central Ry. Co., 8 Am. St. Rep., 876; Osborne v. McMasters, 12 Am. St. Rep., 698; Harker v. Cedar Rapids & N. Ry. Co., 45 Am. St. Rep., 242; 21 Am. & Eng. Ency. Law (2d ed.), p. 470 et seq.

At the very time appellee was injured, he was working on appellant's premises not as a mere volunteer or trespasser, but upon the implied invitation of appellant; and the work he was then doing was really for the benefit and account of appellant, since it is ordinarily the duty of a common carrier, such as is appellant, not only to carry safely, but also to unload in good order property tendered to it for transportation. Leas v. Continental Express, 99 S. W. Rep., 861; Missouri, K. & T. Ry. Co. v. Holman, 39 S. W. Rep., 130; Weatherford, M. W. & N. W. Ry. Co. v. Duncan, 32 S. W. Rep., 878; Campbell v. Harris, 23 S. W. Rep., 35; Lovell v. Kansas City Southern Ry. Co., 97 S. W. Rep., 193; Loehring v. Westlake Const. Co., 94 S. W. Rep., 750; Sykes v. Ry. Co., 77 S. W. Rep., 723; Savannah F. & W. Ry. v. Booth, 25 S. E. Rep., 928; Ella v. Boyce, 70 N. W. Rep., 1106; Ryan v. New York Cent. & H. Ry. Co., 34 N. Y. S., 665; 23 Am. & Eng. Ency. Law (2d ed.), 736, 739, 746.

It is the duty of the ultimate or last of several connecting carriers, over whose roads a car of freight has been carried, to use ordinary care to leave said car in a reasonably safe condition to be unloaded by the consignee or his servants, and a breach of that duty constitutes negligence rendering such ultimate carrier liable in damages to any servant of such consignee who may suffer injuries while himself using ordinary care in the unloading of such car. Sykes v. St. Louis & S. F. R. Co., 77 S. W. Rep., 723, and other cases heretofore cited.

The duty of inspection or examination by ultimate carrier of a car placed for unloading by a consignee, to see that same is left in a reasonably safe condition for unloading, arises as matter of law, as to which the trial judge should in some form instruct the jury; the extent and nature of such inspection or examination, whether external, internal or otherwise, entirely depend upon the particular facts and circumstances of the particular case. It is for the jury to say whether or not the ultimate carrier has, in the particular instance under consideration, discharged its duty of reasonable inspection. Galveston, H. & S. A. Ry. Co. v. Smith, 98 S. W. Rep., 240, and 93 do., 184; Galveston, H. & S. A. Ry. Co. v. Cherry, 98 S. W. Rep., 898; Leas v. Continental Express, 99 S. W. Rep., 859; Galveston, H. & S. A. Ry. Co. v. Stevens, 94 S. W. Rep., 395; Southern Kansas Ry. Co. v. Sage, 84 S. W. Rep., 814; San Antonio & A. P. Ry. v. Lindsey, 65 S. W. Rep., 668; Gulf, C. & S. F. Ry. Co. v. Haden, 68 S. W. Rep., 530; Gulf, C. & S. F. Ry. Co. v. Brooks, 73 S. W. Rep., 571; Galveston, H. & S. A. Ry. Co. v. Davis, 65 S. W. Rep., 217; Galveston, H. & S. A. Ry. Co. v. Buch, 65 S. W. Rep., 681; International & G. N. Ry. Co. v. Hawes, 54 S. W. Rep., 325; Missouri, K. & T. Ry. Co. v. Chambers, 43 S. W. Rep., 1090; Galveston, H. & S. A. Ry. Co. v. Edwards, 26 S. W. Rep., 633; Missouri Ry. v. Crenshaw, 9 S. W. Rep., 262, and 71 Texas, 340; and Felton v. Bullard, 94 Fed. Rep., 781.

It is as much the duty of the ultimate carrier, such as is appellant in this instance, to make a reasonably careful inspection of the manner in which a car is loaded as it is its duty to inspect the condition of the car itself; and for its neglect in either respect it is liable in damages to any person rightfully engaged in unloading said car, who suffers injuries as a result of such negligence. El Paso & N. W. Ry. Co. v. McComas, 72 S. W. Rep., 631-2; McCray v. Galveston, H. & S. A. Ry. Co., 34 S. W. Rep., 95; and Texas & N. O. Ry. Co. v. Bell, 39 S. W. Rep., 636.

In this case no duty of inspection devolved upon appellee; on the contrary, he had the right to assume that appellant had done its duty by placing said oil car in a reasonably safe condition for unloading. Galveston, H. & S. A. Ry. Co. v. Udalle, 91 S. W. Rep., 331; Missouri, K. & T. Ry. Co. v. Hutchens, 80 S. W. Rep., 415; Galveston, H. & S. A. Ry. Co. v. Davis, 65 S. W. Rep., 218; San Antonio & A. P. Ry. Co. v. Waller, 65 S. W. Rep., 212; San Antonio & A. P. Ry. Co. v. Lindsey, 65 S. W. Rep., 670; Texas & H. S. Ry. Co. v. Hartnett, 75 S. W. Rep., 810; Missouri, K. & T. Ry. Co. v. Blackman, 74 S. W. Rep., 74; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347, and 43 S. W. Rep., 508; Texas & P. Ry. Co. v. Archibald, 170 U. S., 671; and Black's Law & Practice in Accident Cases, sec. 68.

It is immaterial that appellee's injuries were unusual or wholly unexpected, or that the particular manner in which same occurred was not anticipated by appellant. Rice v. Dewberry, 93 S. W. Rep., 719; El Paso & N. W. Ry. Co. v. McComas, 72 S. W. Rep., 629; Texas & P. Ry. Co. v. Carlin, 111 Fed. Rep., 777; Christianson v. Chicago, St. P. M. & O. Ry. Co., 69 N. W. Rep., 640; Doyle v.

Chicago, St. P. & K. C. Ry. Co., 42 N. W. Rep., 555; and City of Dixon v. Scott, 54 N. E. Rep., 897.

MR. JUSTICE BROWN delivered the opinion of the court.

For many years prior to June, 1903, H. Runge & Co. were engaged in running a cotton gin at Cuero, Texas, and, at the time of the injury to Wittnebert, they used Beaumont crude oil for fuel. About June, 1903, Runge & Co. ordered a tank of Beaumont oil from McManus, Houck & Co., of Beaumont, which was loaded into a tank car that belonged to the Texas & New Orleans Railroad Company and was by the latter company and an intermediate carrier transported to Victoria and there delivered to the Gulf, West Texas & Pacific Railway Company by which it was hauled to Cuero, Texas, its destination; and, on the 12th day of June, 1903, for the purpose of being unloaded, the car was placed upon a side track opposite to a pipe which connected with the oil reservoir of H. Runge & Co. Wittnebert had charge of the gin of Runge & Co., and with an assistant undertook to unload the oil tank. The method of unloading the tank was to connect a piece of hose with the pipe that was connected with the reservoir, then to fasten the hose upon the end of an escape pipe which extended beneath the bottom of the tank by which the oil would pass through the hose into the pipe leading to the reservoir. It was necessary before connecting the hose with the pipe to remove the tap from the end of the escape pipe through which the oil should pass. Wittnebert and his assistant went under the car and Wittnebert removed the tap, whereupon the oil flowed down from the tank upon him inflicting the injury for which this suit was brought. In the construction of the tank there was a valve which, when properly set, closed the upper end of the escape pipe and would prevent the oil from flowing through the escape pipe. A round iron rod connected with the valve and the other end extended into the dome and the proper method of unloading was, after removing the tap and attaching the hose, to go upon top of the tank and raise the valve by means of a monkey-wrench. When this car was placed upon the track the valve was not set, and when the tap was removed the oil flowed out upon Wittnebert. If the valve had been set as it should have been, this would not have happened. Upon top of the tank was a dome which, when delivered to plaintiff in error, was covered by a cap screwed down upon it. The valve could be raised by a rod which passed up through the tank and into the dome. No one could tell whether the valve was set or not without going upon the car, removing the cap of the dome and ascertaining the fact from the position of the rod.

When the car was delivered to the plaintiff in error at Victoria it was inspected by the inspector of the plaintiff in error at that place, who, however, did not go upon the top of the tank, nor remove the cap to ascertain whether or not the valve was set. The inspector could have ascertained the fact by removing the cap and examining the rod. Wittnebert had unloaded six or seven oil tank cars at the same place before this, all of which had the valves set when they were placed upon the side track at the point for unloading, and

he had never opened the valve before removing the tap. Wittnebert. knew that if the valve was not set and the tap should be removed the oil would flow out upon him, and if he had known that the valve was not set he would not have removed the tap. He could have ascertained the condition of the valve by looking into the dome. The injury inflicted upon the defendant in error was sufficient to justify the amount of damages recovered in the trial court.

The only question presented to this court is, was it the duty of the Gulf, West Texas & Pacific Railway Company to see that the valve was set and the tank in a safe condition to be unloaded when delivered to the consignee.

The judgment in this case has no support except upon the failure of the railway company to examine into the manner in which the car was loaded to ascertain whether the safety valve had been set so as to make it safe for any person who might unload the car when delivered to the consignee. It was the duty of the railway company upon receiving the tank car to make a reasonable inspection of its condition with reference to its fitness for transportation. But we have been unable to find any authority which goes to the extent of holding that it was the duty of the railway company, under such facts, to inspect the manner of loading the car so as to ascertain whether the freight was so arranged as to be safe to persons who might be called upon to remove it from the car. The Honorable Court of Civil Appeals cites Sykes v. St. Louis & S. F. Ry. Co., 77 S. W. Rep., 723, and adopts its reasoning as applicable to the facts of this case. In that case a car had been loaded at Kansas City with odd car wheels consigned to the St. Louis Car Wheel Company at St. Louis. The car was carried by the Kansas City, Fort Scott & Memphis Railway Co., to its connection with the St. Louis & San Francisco R. R. Co., and the latter received and hauled the car to a local station in the city of St. Louis where it was delivered to the Missouri Pacific Railway Co., by which the car was carried to the premises of and delivered to the consignee. Sykes, an employe of the Car Wheel Company, entered the car for the purpose of removing the old car wheels when his foot and leg passed through a hole in the floor whereby he received his injury. There were a number of holes in the floor of that car, with hay and other things thrown over them. Sykes sued the St. Louis & S. F. R. R. Co., the intermediate carrier. The Supreme Court of Missouri held that the intermediate carrier was not liable, but in delivering the opinion said that the Missouri Pacific Railroad Co., which delivered the car to the consignee, would be liable under such circumstances. This was pure dicta, the question was not before the court, the Missouri Pacific Railroad Co. was not a party to the suit. However, that case is distinguishable from this case in this, that the injury in that case occurred through a defect in the car itself, while in this there was no defect in the car, but in the loading of it. The duty of the two carriers depended upon entirely different facts, therefore, if the reasoning of that court be sound it is not applicable to the question now presented to this court.

We have found no dissent from the general rule that when the consignor loads freight upon a car or packs articles for shipment the carrier which receives the car as loaded, or the package as prepared, is not liable for damages which arise from the defect in the loading or the packing. Hutchison on Carriers, sec. 333; Texas & P. Ry. Co. v. Klepper, 24 S. W. Rep., 567; Mexican Cent. Ry. Co. v. Shean, 18 S. W. Rep., 151; Ross v. Troy & Boston Ry. Co., 49 Vt., 364, 24 Am. Rep., 144; Miltimore v. Chicago & N. W. Ry. Co., 37 Wis., 190; Western Ry. Co. v. Harwell, 97 Ala., 350; Klauber v. American Express Co., 21 Wis., 21; McCarthy v. L. & N. Ry. Co., 102 Ala., 193, 48 Am. St. Rep., 29; Cohn v. Platt, 95 N. Y. Supp., 535; Texas Cent. Ry. Co. v. Oloughlin, 84 S. W. Rep., 1104.

In Railway Co. v. Klepper, the Court of Civil Appeals for the Second District held that where horses were placed in a car by the owner for shipment over a railroad the railroad company was not liable for damages which occurred to the horses by their being overcrowded in the car, and this conclusion was placed upon the ground that the railroad company was not responsible for the act of the shipper in improperly loading his own freight, but might haul the car as loaded.

In the case of Mexican Central Ry. Co. v. Sheans, the Commission of Appeals, by Judge Garret, rendered an opinion which was approved by the Supreme Court in which it was held, although expressed in a very few words, that where a loaded car was by one railroad delivered to another it did not devolve upon the railroad receiving the loaded car to cause the loading to be inspected, adjusted or corrected. It is said that the duty to furnish safe appliances and machinery, including cars, does not extend so far.

A lot of mules were shipped upon a railroad which delivered the car loaded to the Western Railroad Company, which delivered the stock to the consignee. Upon delivery it was found that some of them had been injured by spikes or long nails driven on the inside of the car. It was held that the last company was not liable for the damages and the court said: "Such transfers and the inspection to be made during their occurrence, must need be made according to some order and system adopted by the railroad company, and by persons appointed for that duty. Attention must be given to all cars coming into their custody, and all other duties reasonably imposed upon the inspector must be performed. There was nothing to indicate to the inspector the existence of the nails or spikes inside the car. In view of these facts the simple question is was it the duty of the inspector to remove the mules and examine the car on the inside for dangerous projections? We are clearly of the opinion that it was not." (Western Ry. Co. v. Harwell, cited above.) That case is strongly in point; the defect in the loading of the tank, that is, the failure to set the valve could not be seen from the outside, but the dome must have been opened and looked into in order to ascertain that fact.

In Miltimore v. Chicago & N. W. Ry. Co., the shipper selected an open car for the shipment of a wagon and loaded it upon a car without in any way confining it. While the train was in motion a high

wind blew the wagon from the car and it was damaged. The shipper sought to hold the railroad company liable for the injury to the wagon, but the Supreme Court of Wisconsin held that the shipper having chosen his car and having himself loaded the wagon upon the car could not recover for damages resulting from the defective manner in which the wagon was secured.

In the case of Texas Central Ry. Co. v. Oloughlin, decided by the Court of Civil Appeals for the Second District, the railroad company received beef cattle for shipment to St. Louis, limiting its liability to its own line, and the shipment upon that line terminated at Cisco where the car was delivered to the Texas & Pacific Railroad Company which delivered it to the Missouri, Kansas & Texas Railroad Company at Fort Worth. The Texas Central Railroad Company bedded the car but failed to make the bedding sufficient to protect the cattle from injury. The Texas Central delivered the car at Cisco within a few hours after receiving it and the cattle were not seriously damaged up to that time, but the shipment was continued in the same car to Muskogee, Indian Territory, without removing the cattle from the car or renewing the bedding. The principal damage done to the cattle in the shipment occurred after the car left the Central Railroad and that Company being sued for damages defended upon the ground that its liability was limited to its own road, but the court held that as it had made the bedding and improperly loaded the cattle in a car which was to continue as loaded after it was delivered to the succeeding carrier, its liability continued and the next carrier which received it did not become liable for the damages arising from the improper bedding furnished by the first carrier, because it transported the cattle as loaded when delivered to it. This court refused an application for writ of error in that case.

The authorities cited and from which we have made the quotations above establish the proposition that it is not the duty of a railroad company, which receives from the owner or from another railroad company a loaded car, to make an inspection of the manner of the loading when the defect can not be discovered by an external examination. If, in this case, the oil had been lost by the failure to set the valve and Runge & Co. had sued the plaintiff in error for the value of the oil, no recovery could have been had, because no duty of inspection existed, therefore, no negligence would be shown by the facts.

The railroad company in the capacity of common carrier not being liable for property lost under like circumstances, how can it be that a railroad company with regard to the same freight would be under obligation to make an inspection in order to protect persons in the employ of the consignee when unloading the car? The only connection that the railroad company had with the unloading of the car was to place it in a proper position to be unloaded, and in doing so it would have been liable for any injury which might have occurred through negligence on its part in performing that duty. But it was in no sense bound to see that the contents of the tank were in proper condition for unloading. In order to make the

inspection claimed, the inspector at Victoria would have been required to go upon the top of the oil tank, unscrew the cap from the dome and test the valve to ascertain whether it was properly set. As we have seen, no such duty of inspection rested upon the railroad company with regard to loaded cars, received from another road, either to secure the freight or to protect its own servants while operating the train. We have found no precedent for holding that the railroad company owed such duty to the consignee, nor do we know of any rule of law that would support such a conclusion.

If the man who assisted Wittnebert had received the injury and had sued Runge & Co., it would present a more serious question whether Wittnebert's failure to inspect and adjust the valve would not be such negligence as would make Runge & Co. liable. There are sounder reasons for holding that Runge & Co. were charged with that duty to their employes than for placing it on the plaintiff in error.

We are of the opinion that Wittnebert had no cause of action against the railroad company in this case upon the facts as detailed, and, as his own testimony shows that he could make no better case upon another trial, it is useless to remand the case to the District Court. It is therefore ordered that the judgments of the Court of Civil Appeals and the District Court be reversed and that judgment be here rendered that the defendant in error take nothing by his suit and pay all costs of all of the courts.

*Reversed and rendered.*