ALABAMA & V. RY. CO. et al. v. AMERICAN COTTON OIL CO.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1918.)

No. 3061.

1. CARRIERS ⊂⟹121—LOSS OF GOODS—LIABILITY.
  Where a consignee of cotton oil furnished its own tank cars for the shipment, and it was not apparent that the inner valve in the car had not been closed, the railroad company, though bound to exercise a high degree of care, cannot be held liable for loss of the oil resulting from failure to securely close the valve, notwithstanding the outer cap might have prevented the escape, had it not been defective; it appearing cars were often transported without fastening the outer cap.

2. CARRIERS ⊂⟹136—LOSS OF GOODS—ACTION—JURY QUESTIONS.
  In an action against a railroad company for loss of cotton oil shipped in a tank car furnished by the consignee, the question whether railroad company was negligent, or whether the loss resulted from failure of the shipper's servants to securely fasten the inside valve of the car, *held*, under the evidence, for the jury.

3. CARRIERS ⊂⟹117—LOSS OF GOODS—LIABILITY—LEASE OF CAR.
  Where a railroad company made an allowance of the freight because the consignee furnished its own tank car, the company, as it exercised no right over the car, except for the limited purpose of transporting the shipment, should not be treated as a lessee.

In Error to the District Court of the United States for the Southern District of Mississippi; Henry C. Niles, Judge.

Action by the American Cotton Oil Company against Alabama & Vicksburg Railway Company and another. There was a judgment for plaintiff, and defendants bring error. Reversed.

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. H. Thompson, of Jackson, Miss., T. C. Catchings, of Vicksburg, Miss., and J. Blanc Monroe and Monte M. Lemann, both of New Orleans, La. (J. H. Thompson, of Jackson, Miss., on the brief), for plaintiffs in error.

R. L. McLaurin, of Vicksburg, Miss. (McLaurin & Armistead, of Vicksburg, Miss., and Sullivan & Cromwell, of New York City, on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

BATTS, Circuit Judge. The American Cotton Oil Company, on March 16, 1914, contracted to purchase cotton seed oil from the Caldwell Cotton Oil Company of Vicksburg. It delivered to the latter company, on a spur of the Yazoo & Mississippi Valley Railroad, which connected with the plant of the Cotton Oil Company, one of its own oil tank cars, for the loading of the purchased oil. After loading, the car was delivered to the Alabama & Vicksburg Railway Company for shipment, and that company issued its bill of lading to the Caldwell Cotton Oil Company, "notify the American Oil Company at Cincinnati." The Caldwell Cotton Oil Company drew its draft upon the American Cotton Oil Company, with bill of lading attached, and the draft was duly paid. The tank car was received by the railway company and transported by it to Meridian, Miss., where it was delivered to the Alabama Great Southern Railroad Company. The car moved from Meridian on March 27, 1914, and when it reached McClures, Ala., 40 or 60 miles from Meridian, it was discovered that the tank was leaking. The train was stopped and efforts made to prevent the leakage, but all the oil escaped. Suit was by the American Cotton Oil Company to recover from the two railroads the amount paid for the oil. The Alabama Great Southern Railroad Company filed a plea of the general issue, and gave notice, in accordance with the Mississippi practice, of what it would undertake to prove, viz.: That by the terms of the bill of lading it was contracted by the Caldwell Cotton Oil Company and the railroad that neither the initial railroad nor any carrier in possession of the property should be liable for any loss thereto caused "by the act or default of the shipper or owner"; that the oil was loaded by the consignor, by its own employés and agents, and without any participation by the railroad company, into a car specially manufactured for receiving and transporting oil, which was the property of plaintiff, and furnished by it to the Caldwell Cotton Oil Company for the purpose of receiving the oil; that the tank was carelessly loaded by the agents and employés of the Caldwell Cotton Oil Company; that the inner valve was not closed; that the outer valve or discharge pipe beneath the car, through which the oil was intended to be drawn off, was closed by a cap screwed upon it, but that the threads were worn so that it was not tightly screwed on, by reason of which it fell off; that if the inner valve had been closed, the defect in the cap of the outer valve would have made no difference; that it had no means of knowing whether the inner valve had been closed or not; that the cap on the top of the car was screwed down

tight, and that whether the inner valve was closed could not have been ascertained, except by unscrewing the cap and making an examination from the top, which it was under no obligation to do; that outwardly the car was in good and safe condition; that the car was delivered to the Alabama Great Southern Railroad Company at Meridian, with its condition still apparently good, and that the receiving company did not know that the inner valve was not closed, or that the cap on the discharge pipe was not tightly screwed on; that, when the fact was discovered that the oil was leaking, it immediately endeavored to stop the leak; that at no time after the tank was placed in its possession was it roughly handled; and that there was no negligence on its part, and no want of care or foresight.

The allegations with reference to the sale of the oil, furnishing the car, delivery to the railroads, and the loss of the oil were proved. The tank car in which the oil was loaded was of steel. It was filled from the top and was designed to be emptied by a valve in the bottom. This valve was closed by a rod, which ran to the top of the car, held in place by a coilless spring. Underneath the valve was a cap that screwed from the bottom of the car. The cap was not designed to hold the contents of the car, but would have had that effect if the screw threads had not been defective. The unscrewing of this cap would not have the effect of emptying the car, the valve being in place.

The testimony indicates that the car was filled by two employés of the Caldwell Cotton Oil Company. One of these testified that, when they loaded the car, the first thing they did was to take the cap off. He then put the pipe in, and he states that he saw that the inner valve was in good condition. He said that he looked into the car with a light, but did not go down into it; that there was about an inch of something that looked like oil in the tank, and it apparently being clean cotton seed oil, he loaded on top of it. He said that to find out what was in the tank he raised the valve and let it fall back, and that it was left without any further examination.

The balance of the testimony is with reference to the investigations and examinations which were made and the testimony of persons who were familiar with cars of this character and the valves used in this car. This testimony all indicates that, if the valve had been put properly in place, it could not have gotten out of its gasket, even with rough handling by the railroad. The evidence strongly indicates that, when the valve was pulled up by the employé of the Caldwell Company before loading, it did not get back properly into place. The evidence also indicates that the cap underneath, while it might have held the oil, was not intended for that purpose, and that an inspection which would have disclosed a deficiency in this cap would not have suggested the necessity of making any change or repair in the car; it appearing that not infrequently these caps were unscrewed in transit.

[1, 2] The evidence is ample to justify the submission to the jury of the defense of the railroad companies, to the effect that the loss of the oil resulted from the negligence of the employés of the Caldwell Cotton Oil Company, provided such negligence could, under any circumstances, relieve the railroads accepting the car and issuing a bill

of lading therefor.   The trial judge, at the instance of the plaintiff, American Cotton Oil Company, directed a verdict against the railroads.

If the defect in loading, or the defect in the car, had been apparent to the railroad company at the time of the acceptance of the car, the railroad company would doubtless be held responsible, notwithstanding the car had been chosen by the shipper and had been loaded by him. Even under such circumstances, to permit recovery by the shipper would involve a questionable policy.   While there is every reason for holding the railroad companies to a very high degree of care in the exercise of their duties to the public, it can scarcely consist with public policy to encourage the furnishing by shippers of bad cars or bad containers of any kind, or defective loading, by excusing them from the results of their negligence.   No such question, however, arises in this case.   The evidence would justify 'a finding to the effect that the damage resulted from the negligence of the shipper in the loading, and that the negligence in the loading, whereby the valve was not properly seated in its gasket, could not have been ascertained by the railroad, except by unloading the car at a time when there was no apparent reason for unloading.

The following cases support the proposition that the carrier is not to be held responsible for loss occasioned by imperfect packing, or other carelessness on the part of the shipper: Carpenter v. Baltimore & Ohio Railroad Co., 6 Pennewill (Del.) 15, 64 Atl. 253; Pennsylvania Co. v. Kenwood Bridge Co., 170 Ill. 645, 49 N. E. 217; Klauber v. American Express Co., 21 Wis. 21, 91 Am. Dec. 452. The case of Gulf, Colorado & Santa Fé Ry. Co. v. Wittnebert, 101 Tex. 368, 108 S. W. 150, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153, involved a case of substantially the same character as this, and the ruling was in accord with the conclusion we have reached.   There seems to be no adjudication by any federal court upon the subject, but we are entirely satisfied with the reasoning and conclusions of the state courts.

[3]  The plaintiff undertakes to defend the action of the trial court upon the ground that the car became, by its acceptance by the railroad company and the circumstance that an allowance was made for its use, leased to the railroad; and insists that the rule should be the same as where the railroad company had furnished the car.  In fixing the rate to be charged for the transportation of oil, a reduction is made on account of the fact that the car is furnished by the shipper.  This is in no sense a lease to the railroad company.  The railroad company exercises no right over it, except for the limited time and purpose for which it is tendered by the shipper.

The instructions asked by defendants cannot be regarded as a request for the court to determine the questions of fact.  The issues tendered by the defendant railroad company should have been submitted to the jury.

The case will be **reversed for proceedings in conformity herewith.**
    Reversed.