# Richmond

THE CHESAPEAKE AND OHIO RAILWAY COMPANY, A COR-
PORATION, PLAINTIFF IN ERROR, v.
NATIONAL FRUIT PRODUCTS COMPANY, A CORPORATION,
DEFENDANT IN ERROR.

November 13, 1930.

Present, Campbell, Holt, Hudgins, Gregory and Browning, JJ.

*J. M. Perry,* for the plaintiff in error.

*Cochran & Pilson,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The parties litigant will sometimes be referred to as they were related in the trial court.

The National Fruit Products Company, by motion for judgment, proceeded against the Chesapeake and Ohio Railway Company to recover the sum of $953.24, a portion of this, $136.08, was the value of vinegar which leaked from a tank in transit, and the residue, $817.16, was for the cost of repairs to the tank car of the plaintiff, both items of damage alleged to have been caused by negligence of the defendant in handling the said tank car over its lines between Waynesboro, Va., and Charlottesville, Va., or at its yards in the latter place. The suit was in the Circuit Court of Augusta county, Va., and the court entered judgment upon a verdict of a jury against the defendant for $833.77.

The case is before us upon a writ of error awarded to the defendant.

There are two assignments of error which are as follows:

"First: The circuit court erred in overruling the defendant's motion to set aside the verdict of $136.08, for the value of the vinegar lost, as contrary to the law and the evidence, and to enter final judgment in favor of the defendant."

"Second: The circuit court erred in sustaining the plaintiff's motion to set aside the said verdict of the jury in so far as the jury did not find for the plaintiff, in addition to the sum of $136.08, damages to the plaintiff's tank car; in impanelling a jury to assess such damages, and afterwards in overruling the defendant's motion and refusing to set aside the verdict of the jury so impanelled, assessing the plaintiff's damages to its said car at $697.60, as contrary to the law and the evidence."

It will be noted that upon the trial in the first instance the verdict of the jury was only for the value of the lost vinegar, and upon the motion of the plaintiff the court set aside the said verdict in so far as the jury failed to allow damages for the cost of repairs to the tank car, and impanelled another jury to assess such damages. The second jury assessed the damages at the aforesaid sum of $697.60, whereupon the court then set aside the former verdict and entered judgment for the aggregate of the two verdicts, to-wit: $833.77.

Responding to the notice of motion for judgment, the defendant filed in writing its statement of defense consisting of five grounds of defense. Four of these were denials of the allegations of negligence and an affirmance of the bad condition of the tank car when delivered to defendant, and inherent defects in the same and faulty structural condition.

The fifth ground of defense was as follows:

Fifth: "Under the terms of the bill of lading issued for said shipment, there can be no liability upon the part of the defendant for the further reason that the claim of loss, damage, and costs was not made within the six months period therein limited.

The bill of lading was put in evidence by the plaintiff as were the claims made by it to the defendant for loss, damage and costs of repairs to the tank car. The defendant by cross-examination of plaintiff's witness emphasized the dates of such claims.

It will inure to clearness of understanding to here give briefly the facts incident to the shipment which is the basis of this controversy.

The plaintiff is a manufacturer of vinegar and one of its plants is located at Waynesboro, Va. It operated two additional plants, one at Winchester, Va., and the other at Martinsburg, W. Va., and at the time of this shipment it owned one tank car, a complete structure, designed to be operated and roll on any standard railroad. This tank car was fitted with two tanks, placed end to end on the car, with wood structures, with iron angles, at both ends of the tanks, together, and a similar structure in the middle of the car between the two tanks, such structures being called bulkheads. There were also iron tie rods which were fastened to the end bulkheads and which extended obliquely to the bottom part of the middle bulkhead and were secured to it by being put through the piece of timber and made fast by a nut on the threads of the projecting end of the rod. The tanks rested upon what was designated as saddles. There were also some scantlings or wooden braces which extended horizontally along the side of the tank car. These were all designed to make stationary or fixed the tanks upon the car.

At the time of shipment the car had been in use fifteen years. It had been built over and reconditioned when necessary and in February before the tanks and woodwork had been rebuilt and upon its last journey, previous to the one in question, one of the tanks had leaked to about one-half of the leakage in question, on account of some impairment of two staves in the tank which, however, had been remedied. This car, with 8,316 gallons of vinegar in the two tanks, weighing over 64,000 pounds, over 32,000 pounds in each tank, was delivered on the 21st day of July, 1925, to the defendant at Waynesboro, Va., *en route* to Somerville. Mass., by way of Charlottesville, Va.

The tank car went forward on the day of its delivery to the defendant as part of the make-up of a local freight train. When it arrived at Charlottesville the train line or air pipe of this car, used in connection with the automatic brakes, was badly deteriorated and leaking and one of the braces was loose at one end, and a "bad order" card was placed on it by defendant's inspector. This meant that it was necessary for the car to be shopped for repairs and preliminary to this it had to be removed to the bad order track. Thus the car in question, with another loaded with ballast, were switched to the last named tracks and coupled with other cars already there. The yard brakeman rode on the front end of the tank car and operated the brakes in the process of coupling.

Necessarily there is a jar from the impact when one car is coupled to another.

When the coupling was effected one of the tie rods was disconnected with the timber of the middle bulkhead to which it was held by the nut already referred to, which caused the surging of the vinegar to move the front end bulkhead forward, which in turn made the tank lurch toward the front end and then the larger part of the leakage ensued. The tank was repaired to prevent further leakage and the car was returned the next morning, July 22, 1925, to Waynesboro, Va., and when it arrived it was in bad condition—29 staves of the tank broken at the ends, some stay rods, bulkheads, etc., broken—and there the vinegar was pumped out and it was discovered that some 900 gallons had been lost. The empty car was then routed to the plaintiff's repair plant at Martinsburg, W. Va., where other and further damages to the car were detected.

Witnesses for the plaintiff, who inspected the car when it was delivered to the defendant at Waynesboro, testified that it was in excellent condition. The bill of lading also bore the notation, "in apparent good order."

The uncontradicted testimony showed that the car had been recently painted and that the nut on the end of the tie rod, which served to hold the structure in place and fixed, was covered over with paint, and when the tie rod, at the time of the coupling, pulled out of the beam at the base of the middle bulkhead, it was disclosed that the end of the tie rod was held in place by only two threads of the nut, in other words, the nut had been screwed to the tie rod to the extent of only two of its threads, which were stripped at the time of the coupling impact, the effect of which was to deprive the bulkhead on the forward end of the car of its support and cause it to swing out of place, from which the leakage occurred and we may fairly say the subsequent injuries to the crippled structure.

Unquestionably the evidence proved that neither the freight train nor the car in question had any rough handling, or was used by the defendant in any other way than was customary and usual. Indeed the testimony establishing this was uncontradicted. The conclusion, then, that the damage complained of was caused by the defects, pointed out, in the tank car, which were undiscoverable by reasonable inspection by those who inspected the car at the place of shipment, is inescapable.

The plaintiff signally failed to prove any negligence on the part of the defendant.

██ ██ The tank car was the property of the plaintiff and was furnished to the defendant for the carriage of its own product.

The bill of lading referred to provides that—

"1 (b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or any damages thereto or delay caused by the act of God, or the public enemy, the authority of the law, or the act or default of the shipper or owner."

In the case of *Alabama & V. Ry. Co.* v. *American Cotton*

*Oil Company* (C. C. A. 1918), 249 Fed. 308, 311, the court said:

"If the defect in loading, or the defect in the car, had been apparent to the railroad company at the time of the acceptance of the car, the railroad company would doubtless be held responsible, notwithstanding the car had been chosen by the shipper and had been loaded by him. Even under such circumstances, to permit recovery by the shipper would involve a questionable policy. While there is every reason for holding the railroad companies to a very high degree of care in the exercise of their duties to the public, it can scarcely consist with public policy to encourage the furnishing by shippers of bad cars or bad containers of any kind, or defective loading, by excusing them from the results of their negligence. No such question, however, arises in this case. The evidence would justify a finding to the effect that the damage resulted from the negligence of the shipper in the loading, and that the negligence in the loading, whereby the valve was not properly seated in its gasket, could not have been ascertained by the railroad except by unloading the car at a time when there was no apparent reason for unloading.

"The following cases support the proposition that the carrier is not to be held responsible for loss occasioned by imperfect packing, or other carelessness on the part of the shipper: *Carpenter* v. *Baltimore & Ohio Railroad Co.*, 6 Pennewill (Del.) 15, 64 Atl. 253; *Pennsylvania Co.* v. *Kenwood Bridge Co.*, 170 Ill. 645, 49 N. E. 217; *Klauber* v. *American Express Co.*, 21 Wis. 21, 91 Am. Dec. 452. The case of *Gulf [W. T. & P. R.], Colorado & Santa Fe Ry. Co.* v. *Wittnebert*, 101 Tex. 368, 108 S. W. 150, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153, involved a case of substantially the same character as this, and the ruling was in accord with the conclusion we have reached. There seems to be no adjudication by any federal court

upon the subject, but we are entirely satisfied with the reasoning and conclusions of the State courts."

In *Frohlich* v. *Pennsylvania Co.* (1904), 138 Mich. 116, 101 N. W. 223, 225, 110 Am. St. Rep. 310, 4 Ann. Cas. 1140, it was said:

"The rule applicable in the case before us is thus stated by the text-writers: 'Where a shipper exercises his own judgment, is not deceived or misled by the carrier, and chooses a car for the transportation of his property, the carrier is not answerable for the sufficiency of the car, for in such a case he does not trust to the carrier, nor rely upon the duty of the carrier, but, on the contrary, freely exercises his right of choice, and relies entirely upon his own judgment, so that there is no reason for affirming that the carrier was guilty of any wrong,' 4 Elliott on Railroads, section 1480."

In 4 Elliott on Railroads (3d ed.), section 2229 it is said:

"The rule holding railroad carriers bound to furnish cars adapted to the goods they undertake to transport does not apply where the shipper, with full means and opportunities of knowledge, voluntarily selects the car on which he desires his property transported. The carrier is not responsible in such a case for damages resulting from the unsuitableness of the car. If, however, the carrier fails to disclose hidden defects, which it was his duty to reveal, it will be responsible for injuries to the goods, attributable to such defects. There is no violation of principle in holding that where the shipper exercises his own judgment, is not deceived or misled by the carrier, and furnishes or chooses a car for the transportation of his property, the carrier is not answerable for the sufficiency of the car, at least where the shipper selects the car in consideration of a reduced rate, or the like, for in such a case he does not trust to the carrier nor rely upon the duty of the carrier, but, on the contrary, freely exercises his right of choice, and relies

entirely upon his own judgment, so that there is no reason for affirming that the carrier was guilty of any wrong * * *."

The provision in the section of the bill of lading quoted is sustained by the authorities cited, and that the defendant shall not be held liable for loss or damage to property caused by the act or default of the shipper or owner is a proposition of law founded upon sound legal principles and reason.

In the above cases the shippers simply selected or chose the cars in which their property was transported. In the case in judgment the plaintiff owned the tank car, rebuilt and reconditioned it from time to time and loaded and furnished it to the defendant and received compensation for its use of one and one-half cents per mile for each mile traveled in the round trip—circumstances which make the principles announced of stronger and more convincing application.

The bill of lading further provides:

"Section 2 (b). Claims for loss, damage, or injury to property must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property * * *; provided that if such loss, damage or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery * * *."

As has been pointed out the shipment was interstate. The terms and conditions of the bill of lading or shipment contract were lawful and in harmony with the Federal act [49 U. S. C. A., section 20 (11)], and have repeatedly been given judicial sanction by the Federal and State courts.

With respect to the effect of the terms of a bill of lading almost precisely like the one we are considering, this court

said in the case of *Davis* v. *Rodgers*, 139 Va. 620, 124 S. E. 408, 409: "That these stipulations are part of Federal regulations for interstate commerce and that they are *valid* and *reasonable* and not affected by section 206 of the transportation act of 1920 \* \* \* are matters that are 'not in dispute.' " (Italics supplied.)

In the case of *Old Dominion S. S. Co.* v. *Flanary*, 111 Va. 816, 69 S. E. 1107, 1109, the case of *Liquid Carbonic Co.* v. *Norfolk & Western Ry. Co.* 107 Va. 323, 58 S. E. 569, 13 L. R. A. (N. S.) 753, was quoted with approval in which it was said: "A condition in a bill of lading that claims for loss or damage shall be made in writing to the carrier's agent at the point of delivery promptly after the arrival of the property, and if delayed more than thirty days after the delivery of the property, or after due time for the delivery thereof, there shall be no liability upon the carrier, is a reasonable provision and will be upheld. Such a provision contravenes no public policy and excuses no negligence, but is a reasonable regulation for the protection of the carrier from fraudulent imposition in the adjustment and payment of claims for goods alleged to have been lost or damaged."

See *Atlantic Coast Line Ry. Co.* v. *Bryan*, 109 Va. 523, 65 S. E. 30; *Va.-Carolina Chem. Co.* v. *Southern Express Co.*, 110 Va. 666, 66 S. E. 838; *Georgia, etc., Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; *C. & O. Ry. Co.* v. *McLaughlin*, 242 U. S. 142, 37 S. Ct. 40, 61 L. Ed. 207.

█ The plaintiff contended that the provision of the bill of lading was waived by the defendant in that it was not insisted upon in the trial and because there was no express ruling upon the same by the trial court nor was it the subject of a plea by the defendant. Our former references, in this opinion, to this phase of the matter is our warrant for the assertion that this contention is not sus-

tained and that there was no waiver by the defendant of its right to make this defense in this court.

But if this were not so, as a matter of law, the stipulation in the bill of lading cannot be waived.

██ ██ Corpus Juris, volume 10, page 340, section 495, under the heading "Waiver of Notice of Claim for Loss or Injury," says:

"So far as interstate shipments are concerned, it has been settled definitely that a stipulation in the shipping contract requiring notice of loss or damage cannot be waived. As was stated in a case not involving an attempted waiver of a requirement of notice of claim for loss or injury, but in close analogy thereto, 'the prohibitions of the statute against unjust discrimination relate not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments or the waiver of defenses open to the carrier.' As respects interstate shipments State courts are of course bound to enforce the rule stated in the *Blish Case* that the requirement of notice cannot be waived by the carrier, even though the goods were converted by the carrier * * *"

The cases cited as authority for the above statement of the law are: *Georgia, etc., Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; *Phillips Co.* v. *Grand Trunk Western Ry. Co.*, 236 U. S. 662, 667, 35 S. Ct. 444, 59 L. Ed. 774; *McFall* v. *St. Louis, etc., Ry. Co.*, (Mo. App.), 185 S. W. 1157; *Olivit* v. *Penn. R. Co.*, 88 N. J. L. 241, 96 A. 582.

In *Texas and P. R. Co.* v. *Leatherwood*, 250 U. S. 478, 481, 39 S. Ct. 517, 518, 63 L. Ed. 1096, it is said:

"Leatherwood contends that the principle upon which the case was decided is not applicable here, because there the carriers sought to avail themselves of the second bill of lading, while here they seek to ignore it; and he insists that the carriers are, by their conduct, estopped from

asserting its invalidity. As stated in *Georgia, F. & A. R. Co.* v. *Blish Mill. Co.*, 241 U. S. 190, 197, 36 S. Ct. 541, 60 L. Ed. 948, 952, the parties to a bill of lading cannot waive its terms, nor can the carrier by its conduct give the shipper a right to ignore them. 'A different view would antagonize the plain policy of the act, and open the door to the very abuses at which the act was aimed.' The bill of lading given by the initial carrier embodies the contract for transportation from point of origin to destination; and its terms in respect to conditions of liability are binding upon the shipper and upon all connecting carriers, just as a rate properly filed by the intial carrier is binding upon them. Each has in effect the force of a statute, of which all affected must take notice. That a carrier cannot be prevented by estoppel or otherwise from taking advantage of the lawful rate properly filed under the Interstate Commerce act is well settled. A carrier has, for instance, been permitted to collect the legal rate, although it had quoted a lower rate, and the shipper was ignorant of the fact that it was not the legal rate. *Texas & P. R. Co.* v. *Mugg*, 202 U. S. 242, 26 S. Ct. 628; 50 L. Ed. 1011; *Illinois C. R. Co.* v. *Henderson Elevator Co.*, 226 U. S. 441, 33 S. Ct. 176, 57 L. Ed. 290; *Louisville & N. R. Co.* v. *Maxwell*, 237 U. S. 94, 35 S. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665, P. U. R. 1915C, 300; *Missouri K. & T. R. Co.* v. *Schnoutz*, 245 U. S. 641, 38 S. Ct. 221, 62 L. Ed. 527 (per curiam)."

Counsel for the plaintiff argue forcefully and quite convincingly that the defendant was a common carrier both as to the vinegar and the tank car. We think this is so, but it is not effective for the purpose urged.

█ The evidence does not, in the slightest degree, show negligence upon the part of the defendant carrier—it does show that the damage was caused by the act or default of the plaintiff, shipper and owner of the tank car. It shows also that claim for damage for loss and injury was

not made by the plaintiff, or any one for it, until ten months after the car was damaged, in the case of the vinegar, and eleven months in the case of the tank car. This was in utter disregard of the stipulation in the bill of lading. The case is thus controlled by the Federal law [49 U. S. C. A. section 20 (11)] to which we must give effect.

It follows that the trial court erred in sustaining the motions of the plaintiff concerning the verdict of the two juries, and in not sustaining the motion of the defendant to set aside the verdicts as contrary to the law and the evidence; and therefore we reverse the judgment of the said court and enter judgment for the defendant.

*Reversed.*