# Western Railway Co. *v.* Harwell.

*Action against Railroad Company as Common Carrier for Injuries to Live Stock Transported.*

| 97 | 341 |
| 102 | 413 |
| 97 | 341 |
| 128 | 546 |
| 97 | 341 |
| 135 | 510 |
| 135 | 512 |

1. *Exemptions in special contract, when enuring to benefit of connecting carrier.*—When it is stipulated by the shipper in a contract for transportation with the receiving carrier "and its connecting lines," that the carriers are to be released from damages, except when caused by their negligence, and providing that its terms shall enure to connecting lines, unless they stipulate otherwise, the connecting lines receiving and transporting freight under such contract are entitled to the benefit of their exemptions, notwithstanding no rate for the entire distance is fixed.

2. *Ratification of contract by connecting lines.*—The mere fact that the connecting carrier receives and forwards the freight does not raise the presumption that it did so under such contract, but to avail as a defense to an action for damages for injury to such freight it must show a ratification of such contract.

3. *Stipulations in way-bill insufficient to show ratification of contract.*— A plea that the way-bill showed that the freight was shipped at a released rate, which was a reduced rate of freight, is insufficient to show that the connecting line accepted the terms of the contract made with the receiving line.

4. *What sufficient consideration of release of liability as common carrier.*—Reduced rates given for the transportation of freight is sufficient consideration to support shipper's promise to release connecting lines from liability as common carrier for points beyond the receiving carrier's line.

5. *What shows ratification of contract*—In the absence of proof that the shipper made any contract with the connecting line other than the one made by the receiving carrier, and proof made that the freight was transported in the same car in which it was shipped by the receiving carrier, and under the same way-bill, that the shipment was at the owner's risk, and the freight charged was the established released rates when shipments were made at owner's risk, shows that the connecting line accepted the terms of the contract made by the shipper with the receiving carrier, and entitles the connecting carrier to the benefit thereof.

6. *Burden of proof as to cause of injury.*—In an action for injuries against the connecting carrier the burden is on the plaintiff to show that the injury occurred after the freight came into the possession of the defendant.

7. *Stipulations as to notice of injury before removal of live stock.*—A stipulation requiring notice of the injury before the removal of animals at the place of delivery is not to be strictly construed against the shipper, and the shipper has a reasonable time after the removal, in case the injury is not then discovered, in which to give the notice, and what is a reasonable time, is a question for the jury.

8. *Stipulation limiting value in case of injury to live stock.*—A stipulation in a contract for the shipment of mules that, in consideration of a reduced rate of freight, the carrier shall in no case be liable for no more than one hundred dollars for a mule is valid.

[Western Railway Co. v. Harwell.]

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

This is the second appeal in this case and the facts are substantially the same as found in the opinion as reported in 91 Ala. 340, and are also stated in the opinion rendered on this appeal, except as to the following clause in the contract of shipment, viz: "And it is further agreed that should damage occur for which the said party of the first part (R. R. Co.) may be liable, the value at the place and date of shipment shall govern the settlement, the amount claimed shall not exceed for a horse or mule, one hundred dollars, which amount it is agreed are as much as such animals herein agreed to be transported are worth."

The presiding judge, in his general charge, among other things, instructed the jury as follows:   "If the defendant desires to bring itself within the scope of the exemptions contained in the special contract, it must reasonably satisfy the jury that it ratified the contract by receiving the property in the same car in which it was carried to Montgomery, making no other contract or stipulation for its transportation, and by making concessions in the freight rate; that is, carrying the property by reason of said contract at a less rate than its usual and customary rates."   The defendant duly excepted to this portion of the general charge, and also separately excepted to the court's giving each of the following charges at the request of the plaintiff:

(A) "If the car was an improper car to transport the mules in, if the facts in evidence reasonably satisfy the jury that the mule was injured in the car, and from such defect, while in the defendant's possession, then the defendant would be liable." (b) "If the jury should find that the defendant did not ratify the contract which had been previously made between the plaintiff and the Louisville & Nashville Railroad Company, the defendant, if liable at all, would be liable for the value of the mule, and the liability would not be restricted to $100.00 mentioned in the contract."   The defendant then requested the following written charges, and separately excepted to the court's refusal to give each of them : (b) "The terms of the contract of shipment shown by the bill of lading applies to the defendant." (c) "Unless the evidence shows that it was otherwise stipulated by the defendant, the terms and conditions of the bill of lading inured to the benefit of the defendant." (d) "Unless the evidence shows that it was otherwise stipulated by the Western Railway, the terms and conditions of the bill of lading offered in evidence by plaintiff inured to its benefit." (2) "If the jury

[Western Railway Co. v. Harwell.]

believe from the evidence that the injury to the mule was caused by striking its head against a nail or other hard substance in the car while being transported, they must find for the defendant, unless it was guilty of some negligence in allowing said nail or hard substance to be or remain in the car." (3) "The plaintiff, having by his contract accepted the car as a fit and proper one, in which the mules were transported, cannot recover for any defect in said car which may have caused or contributed to the injury complained of, unless he has shown some negligence on part of the defendant causing or contributing to said defect." (8) "If the jury believe from the evidence that the plaintiff failed to give notice of the claim for damages here sued on to the agent of defendant from whom he received said animal, before said animal was removed from the place of delivery, and before said animal was mingled with other animals, they must find for the defendant." (11) "If the defendant has shown by the evidence that its track was in good order, that the equipment and appliances on the train were adequate, and there was no fault on its part in running and managing it the jury should find for the defendant." (13) "Under the contract of shipment in this case the defendant is only liable as a private carrier for hire, and is only liable for the loss or injury which could have been prevented by the use of ordinary diligence. A private carrier is not an insurer." (17) "If the jury believe from the evidence that plaintiff received the mule on the morning of the 29th of December, 1888, in apparent good order, and that he had the mule driven to his private lot immediately afterwards, and that in a few minutes after it was in his lot he discovered that the mule was injured, and that he failed to give the defendant any notice of such injury, or to make any claim thereof until the 4th day of January, 1889, then such notice and claim were not made in a reasonable time." (19) "If the jury believe from the evidence that plaintiff's mule was transported from Columbia, Tennessee, to Opelika, in the same car that plaintiff agreed in his contract was suitable and sufficient for the purpose, and that said car was delivered to the defendant railway company by the connecting line, the Louisville & Nashville Railroad Company, loaded with mules, and ready for shipment in good order, so far as the agents of the defendant could ascertain by inspecting the same without unloading it, or going into the car loaded with mules, then it was defendant's duty as a common carrier to receive and forward it as tendered, and defendant would not be responsible for damages sustained

[Western Railway Co. v. Harwell.]

by the mule striking his head on a nail or other hard substance in the car, the presence of which in said car was not known to defendant." (20) "The contract of shipment releases the defendant of the common carrier liability as an insurer, and, unless the defendant was guilty of some negligence, the plaintiff cannot recover, and the jury should find for the defendant unless they should find from the evidence that the defendant was guilty of some negligence." (23) "If the jury find from the evidence that defendant's railway track was in good order, that the equipment and appliances of the train were adequate, and that there was no fault or negligence on its part in handling the stock or running and managing its train, and the plaintiff has failed to show by evidence how the injury complained of occurred, they must find for the defendant." (32) "In no event can the plaintiff recover more than one hundred dollars and the interest thereon from the date of the injury complained of."

There was judgment for the plaintiff, and defendant appeals and assigns as error the various rulings of the lower court.

GEORGE P. HARRISON for appellant, cited *Western Railway Company v. Harwell*, 91 Ala. 340. *R. R. Co.. v. Androscoggin Mills*, 22 Wall. 594; *Magea v. C. & A. R. R. Co.* 45 N. Y. 514; *Manhattan Oil Co. v. C. & A. Railroad Co.* 54 N. Y. 196; *Lamb v. C. & A. R. R. Co.* 46 N. Y. 271; *Whitworth v. Erie R. R. Co.*, 6 Am. & En. R. R. cas. 349; *Holladay v. St. Fe. R. R. Co.* 6 Am. & En. R. R. cas. 433; 2nd. Am. & En. Enc'y of Law 871 (g) and authorities there cited; Code of Ala. Sec. 1165; *Jones v. Pullen* 66 Ala. 306; *So. Ex. v. Crook*, 44 Ala. 468; *C. & W. Rw'y Co. v. Ludden & Bates*, 89 Ala. 612; Hutchinson on Carriers, § 376; *C. R. R. & B. Co. v. Smitha et al.* 85 Ala. 47; *Steel & Burgess v. Townsend*, 37 Ala. 247; *Maull v. Vaughan*, 45 Ala. 134; *Rutledge Adm'r v. Townsend, et al*, 38 Ala. 706 & 718.

J. M. CHILTON, *contra*, cited Hutchinson on Carriers § 271; *McGhee v. Railroad*, 45 N. Y. 574; *Bubeck v. Railroad*, 49 N. Y. 491; *Merchants D. T. Co. v. Bells* 80 Ill. 473; *Manhattan Oil Co. v. C. & A. R. R.* 54 N. Y. 197; *St. John v. Erie R'y* 22 Wall. 136; *Railroad Co. v. Androscoggin Mills*, 22 Wall. 594; *Whitworth v. Erie R'y.* 87 N. Y. 514; s. c. 6 Am. & En. R. R. Cases, 349; *Holliday v. St. Louis R. R. Co.* 24 Mo. 159; Lawson on Carriers, § 243; *M. & G. R. R. v. Copeland*, 63 Ala. 219; *Nelson v. Mannings*, 53 Ala. 549; *Lamb v. C. & A. R. R. Co.* 46 N. Y. 278; Hutchinson on Carriers, 246; *Rush*

[Western Railway Co. v. Harwell.]

*v. State*, 61 Ala. 89; 3 Brick. Dig. 40, § 125; 47 Ala. 652; *Ib·* 203; *Ib.* 543; 50 Ala. 183; 75 Ala. 116.

HEAD, J.—Case, against appellant, for negligence in transporting, as a common carrier, plaintiff's mule, causing its death.

Plaintiff shipped a car load of mules from Columbia, Tenn., to Opelika, Alabama. He entered into a special contract in writing, with the receiving carrier, the Louisville & Nashville Railroad Company, for and on behalf of that company "and its connecting lines," whereby that company undertook to carry the mules to Montgomery, Alabama, and deliver them to a connecting carrier for transportation to Opelika. The contract exempted the company and its connecting lines from certain of their common law liabilities as common carriers, and imposed certain duties on the shipper in respect of the care and treatment of the stock in its transportation. It contained this clause: "And it is further agreed that when necessary for said animals to be transported over the line or lines of any carrier or carriers to the point of destination, delivery of the said animals may be made to such other carrier or carriers for transportation upon such terms and conditions as the carrier may be willing to accept; provided that the terms and condition of this bill of lading shall inure to such carrier or carriers unless they shall otherwise stipulate, but in no event shall one carrier be liable for the negligence of another."

Opelika, Ala., is named in the contract as the point of destination, though, as we have said, the obligation of the receiving carrier was to carry to Montgomery only. When this case was before us at a former term (91 Ala. 340) we ruled that the defendant, receiving the mules at Montgomery from the Louisville & Nashville Railroad Company and transporting them to Opelika under an acceptance or ratification of the contract made in its behalf by the receiving carrier, became entitled to the benefit of the stipulated exemptions. We adhere to that ruling.

The defendant by its pleas 4, 5, 6 and 8, set up special defenses, growing out of the stipulated exemptions. These pleas contain no allegation of acceptance or ratification of the contract by the defendant, and its carriage of the freight thereunder; and the court properly sustained a demurrer to them on that ground. It does not appear that the Louisville & Nashville Railroad Company was authorized or undertook to bind the defendant, to the terms of the contract, but on the contrary, it was by the contract itself expressly

[Western Railway Co. v. Harwell ]

left open for the connecting lines to accept the terms made for them or not, at their option. In such case, the law raises no presumption that the defendant, as a connecting carrier ratified the contract and carried the freight under it. It must have shown its ratification by some act or course of contract on its part, developed at some period from its receipt of the mules at Montgomery, to the delivery to the consignee at Opelika; and such act or course of conduct should have been alleged. After the demurrers were sustained, the defendant amended its pleas by adding, "that the defendant received said mule, as a connecting line, on a through way-bill, from the Louisville & Nashville Railroad Company, showing that it was shipped from Columbia, Tenn. to Opelika, Alabama, at a release rate, which was a reduced rate of freight, and that the defendant received and transported said mules, under said contract made by the Louisville & Nashville Railroad Company, and plaintiff, as heretofore set out in said pleas." We think the concluding clause of this amendment, that "defendant received and transported the said mules under said contract," &c., is the statement of a conclusion merely, not allowed in pleading, and adds no force to the pleas. Is what remains sufficient to show *prima facie* an acceptance and ratification of the contract? We think the allegations are too vague and indefinite.

The alleged way-bill as the plea avers showed that the mules were shipped from Columbia to Opelika, "at a release rate which was a reduced rate of freight." We may infer, from this averment, that the way-bill showed, by the terms or expressions it employed, that, in consideration of a reduced rate from Columbia, Tenn., to Opelika, Ala., the shipper had released the carriers from some common law liability; but we can only infer it. Such language is too indefinite to constitute good pleadings; and the court committed no error in sustaining the demurrer, on the ground assigned, that it does not appear that defendant received and transported the mules under the contract. There is nothing in the other grounds of demurrer. The reduction of freight conceded by the Louisville & Nashville Railroad Co., even though only for the carriage of the mules to Montgomery, was a sufficient consideration to support the shipper's promise to release the connecting lines from common law liability for the carriage of the freight beyond Montgomery.

The other grounds are so manifestly not well taken, it is unnecessary to notice them especially. After demurrer sustained, defendant further amended by adding; "that de-

[Western Railway Co. v. Harwell.]

fendant accepting and complying with the contract afore-
said, charged and collected a released rate, which was a re-
duced rate of freight over its line of railroad for the trans-
portation of said mules." Issue was joined on the pleas so
amended. The first replication is clearly bad. It neither
distinctly traverses, nor confesses and avoids the pleas. It
shows that plaintiff received the written contract alleged
in the pleas to have been entered into and under which, it
is alleged, the mules were carried and does not, by the
allegation of any fact, show that the same did not then be-
come the contract under which the mules were carried, or
that they were carried under any other or different contract.
The fact, as averred in the replication, that the mules were
shipped (a fact which may have been accomplished, so far as
the replication shows, by the mere delivery of the mules
to the carrier for transportation) before plaintiff received
the contract, or the fact that plaintiff did not know the
terms of the contract until he received it, does not avoid
the allegation that the written contract was entered into,
and the mules carried under it. See this case, 91 Ala. 340.
The court erred in overruling the demurrers to that re-
plication. If there is any merit in the *third* replication, it
is in its concluding statement, that the defendant did not
receive said animals under any agreement; and this is
nothing more than a joinder in issue upon the pleas, form-
ing an issue already formed upon the record of the fil-
ing of the general replication. The remainder is but the
conclusion of the pleader, having no place in good pleading.
But we can not consider the demurrer because it is
directed to a part only of the replication. A plea or re-
plication, as a whole, is either good or bad. Demurrer
does not lie to a part of it only. See the elementary works
on pleading.

Appellant insists that the undisputed evidence shows its
ratification of the contract, and that the court should have
so instructed the jury. The evidence shows without con-
fict that defendant received the mules from the L. & N. R.
R. Company, at Montgomery, and transported them to
Opelika, in the same car in which they were shipped from
Columbia; that it received and used the same way-bill
which had been used from Columbia. That way-bill
showed that Opelika was the destination of the car, the
amount of freight charges to be collected for the re-
ceiving carrier, the stock-yard charges in Columbia, and the
feed bill at Montgomery. To these were added the defend-
ant's freight charges. All these charges were collected from

[Western Railway Co. v. Harwell.]

plaintiff by defendant's agent at Opelika, on the day the mules were delivered. The way-bill also showed that the mules were shipped at owner's risk, and at a release rate of freight. It is not pretented that defendant made any new contract with the plaintiff. Defendant's agent testified that the freight charged by defendant, to-wit: $22.00, was the established release rate ; that is, the rate charged when stock is shipped at owners risk ; and produced the printed tariff of the company in force at the time of this shipment, which was introduced in evidence and shows that such was the release rate. Both his testimony and the printed tariff showed that the regular rate, when stock is shipped at carrier's risk, is a very much larger sum than the amount charged for this shipment. There is no evidence which it can be insisted is in conflict with this, except the testimony of the plaintiff to the effect that he had frequently shipped car loads of mules over defendant's road from Montgomery to Opelika, prior to the *date of the tariff* offered in evidence, running through a period of several years, "without any contract," and paid the same rate, $22.00. This testimony unexplained would raise the presumption that $22.00 was the regular rate, without a release. It is only a presumption, however, casting on defendant the burden of showing that at the time of the shipment in question, the amount charged was the established release rate. That burden was sustained, in the present case by the testimony above alluded to, which in no wise conflicts with the testimony of the plaintiff. The testimony of both may stand and truth and correctness be accorded to both. We think, under this evidence, it is our duty to hold, as matter of law, that the mules were carried by the defendant under the special contract. The court therefore erred in refusing charges b. c. d. and 20 requested by defendant.

The 6th and 8th pleas set up, in bar of the action, the alleged failure to give notice of the injury to defendant's agent, before the animals were removed from the place of delivery to plaintiff, and before they were mingled with other animals, as plaintiff had stipulated in his written contract to do, as a condition precedent to a right of recovery on his part. We ruled, on the former appeal, that the sufficiency of the notice given was for the jury, and see no reason to hold otherwise now. Charge 17 was, therefore, properly refused. Charge 8 is faulty, in that it ignores the qualification of the words of the contract which the law implies,

Vol. 97.

[Western Railway Co. v. Harwell.]

and which we had occasion to notice in our former opinion.

We held before, and hold now, that, under the contract, any recovery by plaintiff, in this action, is limited to $100.00. Charge b was improperly given and charge 32 improperly refused.

We next dispose of the questions arising upon the general issue. It will be observed that this action, as the complaint is framed, is not predicated upon the absolute liability of the defendant as an insurer of safe delivery, but upon the alleged *negligence* of the defendant and its servants, in the transportation of the mules. Both counts of the complaint are distinctly to that effect. Negligence, therefore, is the *gravamen* of the action and any recovery by the plaintiff must be founded upon it. This being so, the special contract is immaterial to the cause, except as it is necessary to support the special defences growing out of it, and as its recitals affect the burden of proof as to the condition of the car, or exert an influence upon the weight of other testimony. The evidence tends to show that the mule was injured after it went into defendant's custody, and while in its custody, by having its head pierced by a nail or spike of some kind. The nail or spike was discovered, and its existence and agency in producing the injury are shown, if at all, only by inference, to be drawn from the nature of the wound. The evidence also tends to show that the mules were taken out of the car at Montgomery, and fed, but by whom the record is silent. With this exception, they remained in the car throughout their transportation. The only inference the jury could have drawn therefore, as to the location of the nail or spike, was that it was in the car, or at some place to which the mules were carried when taken out to be fed.

It is insisted by appellant that the undisputed evidence rebuts all inference of negligence on its part, in respect to the condition of the car and any injury the mule may have received by the nail or spike therein. This insistence raises the inquiry whether the exercise of ordinary care, under the circumstances, required the defendant to examine the car on the inside, in Montgomery, for projections which might endanger the safely of the mules. There is no dispute in the material facts. The special contract contains this clause : "And it is further understood and agreed that said party of the second part" (the plaintiff) "has examined and found in good order and condition the car or cars provided by said party of the first part for the transportation of said animals,

and hereby accepts the same, and agrees that they are, as thus provided, suitable and sufficient for said purpose." This recital and stipulation, as we held, on the former appeal, place the burden on plaintiff of showing that the car was not in proper condition and that the injury resulted therefrom. It not only places the burden of proof, but is a material fact to be considered in measuring the defendant's conduct—in determining the *quantum* of diligence which devolved on the defendant when the car reached its custody in Montgomery. It is a further fact that plaintiff was, himself, with the car in Montgomery, and examined the mules therein, and notwithstanding his stipulation as contained in the clause above quoted, and the burden he thereby assumed in respect of the condition of the car, he did not regard a further examination by him necessary and made none. The mules had been brought from Columbia in that car without injury. The defendant's inspector carefully examined the car, as a part of the train, on the outside, and found it in good running condition. It then contained the mules, about 22 head, and an examination of the car on the inside would have necessitated their removal. Rapid transit—dispatch in the transfer at Montgomery, and the carriage of the mules on to Opelika,—was contemplated by both parties. Such transfers, and the inspection to be made during their occurrence, must needs be made according to some order and system adopted by the railroad company, and by persons appointed for that duty. Attention must be given to all cars coming into their custody, and all other duties reasonably imposed upon the inspectors must be performed. There was nothing to indicate to the inspector the existence of the nail or spike inside the car. In view of these facts, the simple question is, was it the duty of the inspector to remove the mules and examine the car on the inside for dangerous projections? We are clearly of the opinion it was not. The court erred in giving charge A, and refusing charges 2, 3 and 19. It is uncertain, from the testimony, whether the mules were taken out and fed in Montgomery, by the defendant or by the L. & N. R. R. Co. If by the defendant, it was its duty to account for them during that period, and shows that the injury did not then occur; or if it did, that it was without negligence on its part. It is not claimed by appellee that there was any negligence in the movement of the car from Montgomery to Opelika. The evidence is without conflict that the track was in good order, the train properly manned and that it went regularly through without accident or casualty, or an

[Louisville & Nashville R. R. Co. v. Hairston, Adm'r.]

unusual jolt or jar. That was all the defendant could do in furtherance of a proper movement of the train.

Upon the principles declared in this opinion the oral charge given by the court was erroneous, and charges 3, 13, 20 and 23 should have been given.

If the evidence showed that the mules were not taken out and fed by defendant, and did not reach its custody until they were put back in the car, then the general affirmative charge for the defendant should have been given.

It is unnecessary to notice the other charges.

Reversed and remanded.