**GULF, C. & S. F. RY. CO. v. LAKESIDE IRR. CO. (No. 8919.)**

Court of Civil Appeals of Texas. Galveston. Feb. 17, 1927.

Rehearing Denied March 3, 1927.

1. Pleading ⊝⇒354(2)—In suit by consignee against railroad for loss caused by defective oil car, striking answer that consignor owned and loaded car held error.

In suit by consignee against railroad to recover for loss resulting from defective valve in oil car, it was error to strike from defendant's answer defense that car was not owned by carrier, but was delivered to initial carrier, loaded and sealed by shipper in apparent good condition.

2. Carriers ⊝⇒133—Where consignee sued railroad for loss caused by defective oil car, evidence that shipper owned and loaded car held erroneously excluded.

In suit by consignee against railroad to recover for loss resulting from defective valve in oil car, evidence that car was owned and loaded by shipper, and delivered to initial carrier in apparent good condition, *held* erroneously excluded.

3. Estoppel ⊝⇒95—Railroad held not estopped by failure to plead nonownership of defective car until limitations barred action against owner.

In suit by consignee against railroad to recover for loss caused by defective oil car, defendant *held* not estopped to plead nonownership of car by failure to file such plea until action against owner was barred by limitations.

Appeal from Colorado County Court; E. B. Mayes, Judge.

Suit by the Lakeside Irrigation Company against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Townsend & Scoggins, of Columbus, and Terry, Cavin & Mills, of Galveston, for appellant.

John C. Hoyo, of Seguin, for appellee.

LANE, J. This suit was brought by Lakeside Irrigation Company against Gulf, Colorado & Santa Fé Railway Company to recover the sum of $250 actual damages and $500 exemplary damages. For cause of action, the plaintiff alleged as follows:

"That on or about the 20th day of August, A. D. 1922, Tidal Western Oil Corporation applied to the Missouri, Kansas & Texas Railway Company, a connecting carrier, for one tank car for transporting fuel oil, and that on or about the 21st day of August, A. D. 1922, said connecting carrier aforesaid furnished Tank Car No. 2411, initialed P O O X; that said car, after being loaded with oil, was transported from Burkburnett, Wichita county, Tex., to the order of Jenkins Petroleum Company at Riceland, Colorado county, Tex., over the railroad lines of defendant and its connecting carriers; that said Jenkins Petroleum Company, for a valuable consideration, sold, transferred, and assigned said 'order bill of lading' to plaintiff before the arrival of said tank car of oil at its destination; and that plaintiff is an innocent holder for value.

"That upon arrival of said tank of oil at Riceland, Colorado county, Tex., on or about the 29th day of August, A. D. 1922, the plaintiff Lakeside Irrigation Company paid the defendant company the sum of $170.64, being the freight charges made by the defendant company for transporting said tank of oil as aforesaid, and turned over to defendant the 'order bill of lading' aforesaid; that plaintiff proceeded to unload said oil from said tank immediately upon its receipt, to wit, on or about the 29th day of August, 1922; that the agents, servants, and employés of the plaintiff followed the usual careful procedure in unloading tank cars of oil in the usual careful and diligent manner. That they took off the two inch cap in the usual careful and customary manner, and the oil began to gush out of the tank, due to the fact that the valve of said car was not seated. That about one-half of the oil in said tank was wasted and lost before said tank was coupled to the pipe lines of the plaintiff company, to the great damage of this plaintiff.

"That said loss of oil was due to the carelessness and negligence of the defendant and the connecting carriers, their agents, servants, and employés, in furnishing a car to the shipper in which the valve was not seated and out of order, and to the rough, improper, and negligent manner of handling said tank of oil by the defendant company, and the connecting carriers, their agents, servants, and employés, if said valve was seated at the time the same was turned over to the shipper. That, by reason of the foregoing facts, the plaintiff has sustained actual damages in the sum of $250; and that, by reason of the gross negligence of the defendant, its agents, servants, and employés as aforesaid, it is entitled to recover the further sum of $500 as exemplary damages."

Defendant answered by general denial, and by specially pleading that the car in question did not belong to it, or any of its connecting carriers, but was in fact the property of, and in the service of, the shipper; that the same was tendered to the initial carrier loaded and sealed, and in apparent good condition; that the plaintiff was guilty of negligence in the unloading of said car, in that the usual and proper precautions to determine whether the inside valve was properly seated were not observed.

The plaintiff by supplemental petition specially excepted to so much of defendant's answer as set up as a defense the nonownership of the car, and its delivery by the shipper to the initial carrier, which special exception was by the court sustained.

The case was tried before a jury. The court charged the jury as follows:

"That it is the duty of every railroad company operating a line of railroad within this state to furnish all necessary and suitable cars and vehi-

cles of transportation for all freight offered or tendered, or to be offered or tendered, to it for shipment, within a reasonable time after demand by the shipper. By the term 'suitable cars' is meant cars which are in good order and repair.

"That the defendant company and the connecting carriers which transported the tank car of oil in question are common carriers of freight for hire.

"That the Missouri, Kansas & Texas Railway Company of Texas, the Fort Worth, Denver City Railway Company; I. & G. N. Ry. Co. and Gulf, Colorado & San Francisco Railway Company, being the railroad lines over which the tank car of oil in question was shipped, are connecting carriers, and as such are agents of each other in so far as this shipment is concerned, each the agent of the other, and all the others, agents of each and all, are under a contract with each other and with the shipper, owner, and consignee of such property, and all of such lines or either of them shall be liable, for any damage or injury or loss of freight, to the person sustaining such injury, as he may elect.

"That the tank car of oil in question was shipped under an 'order bill of lading' to the order of Jenkins Petroleum Company, and was by them transferred and assigned to the plaintiff for a valuable consideration, and that the plaintiff is an innocent holder for value, and that said bill of lading is incontestable as to the matters and things therein set forth."

Following the above charge, the court submitted to the jury the following special interrogations:

"No. 1. Was the tank car of oil in question roughly, improperly, or negligently handled by the defendant, Gulf, Colorado & San Francisco Railway Company, or its connecting carriers, their agents, servants, and employés, and was such rough, improper, and negligent handling, if any, of said tank car of oil the cause of the unseated valve?

"No. 2. If you have answered 'No' to question No. 1, then you will not answer this question. If you have answered 'Yes,' then you will answer this question: Did the plaintiff, Lakeside Irrigation Company, suffer any loss by virtue of such rough, improper, and negligent handling of said car of oil by defendant, Gulf, Colorado & San Francisco Railway Company, or its connecting carriers, their agents, servants, and employés, and, if so, what is the amount of such loss?

"No. 3. If you have answered 'Yes' to question No. 1, then you will not answer this question or any of the following questions. If you have answered 'No' to question No. 1, then you will answer this question: Did the Missouri, Kansas & Texas Railway Company, the initial carrier, furnish a suitable tank car to the shipper, Tidal Western Oil Company, in which to ship the oil in question?

"No. 4. If you have answered 'Yes' to question No. 3, then you will not answer the following question. If you have answered 'No' to question No. 3, than you will answer the following question: Did the plaintiff, Lakeside Irrigation Company, suffer any loss by virtue of the failure to furnish a suitable car to the shipper, and, if so, what is the amount of such loss?"

The first two of the interrogations were not answered, but to the third the jury answered, "No," and to the fourth, "Yes; $179.-38."

Upon such answers and the evidence the court rendered judgment for the plaintiff against defendant for $179.38, and interest thereon from date of judgment, and from such judgment the defendant has appealed.

[1] By its first assignment appellant insists, substantially, that the trial court erred in striking out so much of its answer as set up as a defense to appellee's suit that the car in which the oil was loaded and delivered to the initial carrier was not the property of appellant, of the initial carrier, or of any of appellant's connecting carriers, but was in fact the property of, or was in the service and control of, the shipper who delivered the same to the initial carrier; that the same was delivered to the initial carrier loaded and sealed, and in apparent good condition.

[2] And by its sixth, seventh, eighth, and ninth assignments appellant insists that, having made the error above stated, the court further erred in refusing to permit it to submit evidence to prove the defense set up in the plea stricken out, to wit, that the car in question was owned or leased by the Tidal Western Oil Company, or some other oil company; that it was not owned by any of the railway companies, the initial carrier, the delivering carrier, or any of their connecting carriers, nor was it in the control of any of such carriers; that said car was tendered by the Tidal Western Oil Company to the initial carrier, the Missouri, Kansas & Texas Railway Company, loaded and ready for shipment, to be shipped by said initial carrier and its connecting lines to Riceland, Tex.; that an inspection was made of this car by the delivering oil company, the shipper, and that no defect in the car, if any there was, was discovered on such inspection; that the carriers could not, by the usual and customary inspection of such loaded car, or by the exercise of ordinary care, have determined whether or not the defect alleged by the plaintiff existed when the car was delivered to the initial carrier or connecting carriers; that said car was sent out and transported in the condition in which it was received from the shipper; and that at the time of such receipt it appeared to be in good condition.

If these assignments are sustained, it would require at our hands a reversal of the judgment and remand of the cause for retrial.

That the plea stricken out set up a complete defense to appellant's suit, and that it should have been permitted to stand, if timely made, we think, cannot be reasonably questioned, nor can it be questioned that, had such plea been permitted to stand, the evidence sought to be introduced in its support would have been admissible.

The above propositions are, we think, fundamentally sound, and are supported by the

weight of authority. In 10 Corpus Juris, p. 87, § 90, it is said:

"If the consignor undertakes to furnish the cars used in transportation, the carrier is not liable for a loss resulting from their defective condition."

In 4 R. C. L. p. 733, § 203, it is said:

"When a shipper assumes the responsibility of loading a car and seeing that it is properly prepared for the transportation of the particular article which he is loading, the general rule seems to be that he assumes responsibility for all defects in package and loading which are necessarily invisible to the agent of the carrier who accepts the freight or which he cannot discern by ordinary observation, or such inspection as he can readily make."

In Gulf, W. T. & Pac. Ry. Co. v. Wittnebert, 101 Tex. 368, at pages 374 and 375, 108 S. W. 150, 151 (14 L. R. A. [N. S.] 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153), it is said:

"We have found no dissent from the general rule that when the consignor loads freight upon a car or packs articles for shipment the carrier which receives the car as loaded, or the package as prepared, is not liable for damages which arise from the defect in the loading or the packing. Hutchison on Carriers, § 333; Texas & P. Ry. Co. v. Klepper [Tex. Civ. App.] 24 S. W. 567; Mexican Cent. Ry. Co. v. Shean [Tex. Sup.] 18 S. W. 151; Ross v. Troy & Boston Ry. Co., 49 Vt. 364, 24 Am. Rep. 144; Miltimore v. Chicago & N. W. Ry. Co., 37 Wis. 190; Western Ry. Co. v. Harwell, 97 Ala. 350 [11 So. 781]; Klauber v. American Express Co., 21 Wis. 21 [91 Am. Dec. 452]; McCarthy v. L. & N. Ry. Co., 102 Ala. 193 [14 So. 370], 48 Am. St. Rep. 29; Cohn v. Platt [Sup.] 95 N. Y. S. 535; Texas Cent. Ry. Co. v. O'Loughlin [Tex. Civ. App.] 84 S. W. 1104. * * *

"The authorities cited and from which we have made the quotations above establish the proposition that it is not the duty of a railroad company, which receives from the owner or from another railroad company a loaded car, to make an inspection of the manner of the loading when the defect cannot be discovered by an external examination."

See, also, Central of Georgia Ry. Co. v. Chicago Varnish Co., 169 Ala. 287, 53 So. 832.

[3] Appellee, however, contends that appellant was estopped to either plead or prove the nonownership of the car and the facts of its being loaded and delivered to the initial carrier in apparent good condition as a defense to appellee's suit, in that the suit was filed in May, 1924, and appellant filed its answer thereto in July of that year, consisting of a general demurrer and general denial only; that thereafter, to wit, on the 26th day of October, appellee filed its amended petition, wherein it alleged that, on or about August 20, 1922, the Tidal Western Oil Company applied to appellant's connecting carrier for a tank car in which to transport fuel oil, and that the car in question was furnished the shipper by such carrier on the 31st day of August, 1922, and that such car, when loaded by the shipper, was delivered to the initial carrier, was transported from Burkburnett, Wichita county, Tex., to the order of Jenkins Petroleum Company, at Riceland, Colorado county, Tex., over the lines of appellant and its connecting lines, and that appellant for the first time by its supplemental answer, replying to appellee's amended petition, set up the nonownership of the car and its loading and delivery by the shipper as a defense, because such plea of nonownership of the car by the railway companies, and its loading and its delivery by the shipper or shippers to appellant, was not filed until any cause of action which appellee might have had against the two oil companies mentioned was barred by limitation, and therefore the trial court did not err in sustaining appellee's exception.

The contention of appellee is without merit. The acts and nonacts of appellant recited by appellee in its special exception to appellant's answer constitute no grounds of estoppel.

The record shows that in its original petition, filed May 8, 1924, appellee alleged that the Jenkins Petroleum Company of Dallas delivered to the Missouri, Kansas & Texas Railway Company one tank car of oil to be transported from Dallas to Lakeside Irrigation Company, at Riceland, Tex. To such allegation appellant, on the 15th day of July, 1924, answered, as already shown, by a general denial. On the 26th day of October, 1925, appellee filed its amended petition upon which it went to trial, and therein for the first time alleged that the car of oil in question was delivered by the Tidal Western Oil Company to the Missouri, Kansas & Texas Railway Company to be transported from Burkburnett to Riceland, and also alleged that the car in which the oil was loaded was furnished to said shipper by said railway company. To the changed allegation as to the delivery of the car, etc., from the first to the last, made on the day appellee's amended petition was filed, appellant filed its answer, denying generally the last, and specially pleading that part of its answer stricken out by the court. We may add, however, to what we have already said relative to appellee's plea of estoppel, that we think the evidence sought to be introduced by the appellant and rejected by the court was admissible under appellant's general denial of appellee's amended petition upon which it went to trial.

It goes without saying that, if, upon a retrial, it be shown that the car of oil was loaded into a car owned or controlled by the shipper and delivered to the initial carrier, and that the defects of such car, if any, were not known to the carrier, such carrier or carriers would not be liable for damages suffered by reason of such defects.

While we think the several complaints made to the charge of the court are justified,

but as such errors will not likely be repeated upon another hearing, we will not discuss the assignments relative thereto.

For the reasons pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.