**STOKES et al. v. BURLINGTON–ROCK ISLAND R. CO. et al.**
**No. 2433.**

Court of Civil Appeals of Texas. Waco.

Oct. 8, 1942.

Rehearing Denied Nov. 5, 1942.

———◇———

Witt, Terrell, Lincoln, Jones & Riley, of Waco, and Edgar Cale, of Austin, for appellants.

Thompson & Barwise and Luther Hudson, all of Fort Worth, Bradley & Bradley, of Groesbeck, Orgain, Carroll & Bell, of Beaumont, Touchstone, Wight, Gormley & Touchstone, of Dallas, Lombardi, Robertson, Fligg & McLean, of Kansas City, Mo., L. W. Shepperd, of Groesbeck, Walker, Smith & Shannon, of Fort Worth, and Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellees.

HALE, Justice.

Mrs. Enid Stokes and Texas Employers Insurance Association instituted this suit

against Burlington-Rock Island Railroad Company, the Texas and Pacific Railway Company, Kansas City Southern Railway Company, Chicago Rock Island and Gulf Railway Company, Texas and New Orleans Railroad Company and Long-Bell Lumber Company (hereafter referred to respectively as B. R. I., T. P., K. C. S., C. R. I., T. & N. O., and Lumber Company), seeking damages on account of injuries resulting in the death of Charles Stokes. They alleged in substance that the K. C. S. owned a certain flat car which was designed for carrying poles and which it furnished to the other defendants while in a defective condition by reason of a broken or pulled staple on each side of the same; that the T. P. "and/or" the Lumber Company loaded the car at Long Leaf, or at Pleasant Hill, or at Shreveport in the State of Louisiana with telephone poles in a negligent manner in that (a) the loader inserted only four standards in the staples on each side of the car when it could and should have inserted more, (b) the standards so used were of young, brittle timber and small in diameter, whereas the loader could and should have used larger standards of hard, seasoned timber, and (c) after having so inserted such standards the loader braced the same from one side of the car to the other side by the use of wire; that the car of poles thus loaded was transported from Louisiana to Dallas by the T. P., thence to Teague by C. R. I., and to Coolidge, Texas, by B. R. I., where it was delivered to J. E. Morgan & Sons; that while the deceased was acting in the course of his employment with Morgan & Sons in unloading the poles from the car on August 19, 1937, he sustained the injuries resulting in his death in the following manner, viz: he weakened the standards on the east or down side of the car by cutting them partially through at the base, then went on top of the load of poles at the south end and near the west side of the car while another employee of Morgan & Sons went on top of the load at the north end of the car and, at a given prearranged signal from Stokes, each man then cut the top wire bracing the standards at both the north and south end of the car, expecting the weight of the poles to break the weakened standards on the east and roll of their own weight to the east, but when the wires were thus cut simultaneously the standards unexpectedly broke on both sides of the car and the load fell to the west as well as to the east and Stokes, being caught in the poles falling to the west, was killed. They further alleged specific acts of negligence on the part of the defendants in the use of the car by reason of such defective condition, in loading and transporting the same while loaded in such unsafe and insecure manner, and in failing to make reasonable inspections of the car and load, each of which specific acts of negligence they alleged to have been a proximate cause of the injuries and damages complained of.

The transcript does not contain any pleading on behalf of C. R. I. or T. & N. O. The other defendants filed separate answers, each consisting, among other things, of general and special denials and pleas of contributory negligence on the part of the deceased, based upon his conduct in the method and manner which he adopted in unloading the car, it being alleged that he was at such time foreman for Morgan & Sons and had charge, supervision and control of the unloading operations.

Immediately after the plaintiffs had introduced their evidence upon the trial, each of the defendants, other than C. R. I. and T. & N. O., presented its separate motion for an instructed verdict and each motion having been sustained, the court peremptorily instructed the jury to return their verdict in favor of the defendants, which was accordingly done. Thereupon the court rendered judgment, reciting therein that the plaintiffs had dismissed their suit as to C. R. I. and T. & N. O., and decreeing that plaintiffs take nothing as against the other defendants. From this judgment the plaintiffs have appealed upon the contention that the trial court erred in directing the verdict against them.

The evidence in the case was sufficient to sustain findings that the Lumber Company shipped the car of poles from Shreveport, Louisiana, to Morgan & Sons at Coolidge, Texas, by way of T. P. to Dallas, C. R. I. to Teague and B. R. I. to Coolidge, where the car was delivered to the consignee for unloading, and while the deceased and other employees of Morgan & Sons were engaged in unloading the car, a fatal accident happened in substantially the manner as alleged by plaintiffs. The evidence further showed that the deceased was foreman for Morgan & Sons over the other employees engaged in the unloading of the car, that Mrs. Stokes sus-

tained damages on account of the death of her husband and that the Insurance Association paid compensation to her by reason thereof under the terms of the Texas Employers Liability Act.

 It is well settled, however, that the mere happening of an accident constitutes no legal ground for the recovery of damages unless the right of recovery be grounded upon the doctrine of res ipsa loquitur under such circumstances as to raise a presumption of negligence. Since plaintiffs alleged specific acts of negligence on the part of each defendant to have been the proximate cause of the damages complained of, and since the evidence showed the thing causing the accident was not under the exclusive management of any or all of the defendants but was at least partially under the control of the injured party at and prior to the time of his injury, the rule of res ipsa loquitur has no proper application to this case. Davis v. Castile, Tex.Com.App., 257 S.W. 870, and cases cited; Johnson v. Texas & P. R. Co., Tex.Civ.App., 117 S.W.2d 864, error dismissed; Texas & N. O. R. Co. v. Hancock, Tex.Civ.App., 134 S.W.2d 408. Therefore, in order to carry the case to the jury, the burden rested upon the plaintiffs to introduce some evidence tending to establish one or more of their specific allegations of actionable negligence.

 Plaintiffs do not claim K. C. S. had anything to do with loading or transporting the shipment, its asserted liability resting solely upon the contention that it furnished the empty car to the other defendants with a broken or pulled staple on each side and that it knew, or in the exercise of due care should have known, of such defects. There was evidence that after the accident had happened the staple on the west side at the south end was pulled outward from the top and that another staple on the opposite or east side of the car was broken. It is readily apparent that no defect in the staples or standards along the east side of the car could have been a proximate cause of the accident. There was no testimony which, in our opinion, could serve as the basis for a legal inference that the defective condition of the staples, as observed after the accident, existed at the time when the car left the possession of K.C. S. In fact, we find no evidence showing or tending to show when or where the car was last in the possession or ownership of K. C. S., if ever, or what its condition might have been at such time or place. The witnesses testified that the defective condition of the staples when observed did not appear to have been of long duration but seemed "fresh," indicating to them that the staples had been damaged by the falling poles. Any conclusion that the car had a broken or pulled staple on either side when it left the possession of K. C. S., or at any time prior to the accident, would necessarily have to be arrived at by mere surmise and conjecture or by pyramiding one presumption upon another which the law does not permit. Texas Pacific Coal & Oil Co. v. Wells, Tex.Civ.App., 151 S.W.2d 927.

 The only evidence we can find which tends to throw any light on where or by whom the car was loaded is an unsigned invoice and bill of lading. The invoice was on a printed form bearing the name of the Lumber Company, followed by "Kansas City, Missouri," was filled in with a typewriter, indicating that 128 creosoted poles had been sold to Morgan & Sons on August 13, 1937, to be shipped to Coolidge, Texas, and to be there delivered F.O.B. at the net price of $638.31. The bill of lading was on a printed form bearing the name of the Lumber Company, showing its post office address to be Shreveport, La., was filled in with pencil, reciting that on August 13, 1937, one carload of creosoted poles was consigned to Morgan & Sons destined to Coolidge, Texas, routed "T. P. — Sport T. P. Dallas — R. I. — Teague — B. R. I." This bill of lading also recited under "inbound reference" that the shipment was treated in transit, originated at "P. Hill" with 64,700 transit weight available. If the poles were actually treated in Shreveport or elsewhere while in transit, there is no showing as to who treated them or reloaded them after treatment. If the poles were not treated or reloaded while in transit, there is no showing as to who loaded the same at Pleasant Hill or as to the route over which they were transported from the point of origin to Shreveport. Consequently, the evidence was not sufficient to support a legal inference that the car of poles as delivered to Morgan & Sons was loaded by the Lumber Company, or by the T. P., or by both, or if so, as to when or where they were so loaded.

 Upon arrival of the car in Coolidge, a representative of Morgan & Sons checked its contents and released it for

unloading. The car was spotted for unloading on a sidetrack extending north and south, the east rail of which was some lower than the west rail. There was no evidence of shifting of the load in transit or that the load when delivered to Morgan & Sons was unsafe or insecure as a result of the manner in which it had been loaded or transported. After the accident had happened, the broken standards were examined and there was testimony to the effect that some of them were "brittle and snapped like a toothpick." At the time of delivery of the car to Morgan & Sons, the four standards which had been inserted in four of the eight staples on each side of the car held the load intact. At that time these standards were braced or tied together from opposite sides by the use of wires which were in good order. Before snipping the end wires which precipitated the accident, it appears that the deceased and his assistants had previously cut all wires bracing the center standards and the load had remained intact. The rules of the Association of American Railroads governing the loading of commodities on open top cars were introduced in evidence and the testimony showed the load as it existed at the time of delivery came within the requirements of these rules. Manifestly, none of the defendants was an insurer of the safety of workmen who might be engaged by the consignee to unload the poles. Fort Worth & D. C. Ry. Co. v. Hambright, Tex.Civ.App., 130 S.W. 2d 436, error dismissed.

There was no evidence that any of the carriers did or did not make any inspection of the car while en route from its origin to destination. However, since the defendants called no witness but relied upon the insufficiency of plaintiffs' evidence to make out a prima facie case of liability, we do not think any unfavorable inference could arise from their failure to call witnesses who might have had special knowledge. Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Schumacher v. Missouri Pac. Transportation Co., Tex.Civ.App., 116 S.W.2d 1136, error dismissed. Moreover, there was no evidence that any defect, if any, in the car or its equipment and load could have been discovered by an outside or external inspection at any time while the same was in the possession of any of the carriers, or that the dangers incident to unloading the car in the manner and method actually employed were not as open and obvious to the deceased as to any of the defendants.

The only case cited in appellants' brief is that of Hanson v. Ponder, Tex.Com. App., 300 S.W. 35. We think the cited case is distinguishable from the instant case in several particulars. The evidence in the Hanson case appears to have been conflicting on certain controlling issues. The point there as to whether the load conformed to the rules of the American Railway Association was issuable. There was testimony from an expert witness in the Hanson case to the effect that the two cars there involved were not properly loaded. There was evidence in that case of a slipping of the standards while en route and that the inspectors for the delivering carrier discovered and attempted to remedy the same before delivery. Moreover, Hanson was not the foreman in charge of the unloading, there being evidence that he was "directed in a general way by his superiors to go upon the car and load and do what he did do, that some of the acts done immediately before the load began to roll were done by other workers, and that, as a fact, he was not cognizant of any particular danger." See Hanson v. Ponder, Tex.Com.App., 3 S.W.2d 426, 427. In our opinion, the evidence in the instant case is nearer by analogy to that in the case of Anderson v. Southern Ry. Co., 4 Cir., 20 F.2d 71, than to that in the cited case.

We have concluded that the evidence in this case was insufficient as a matter of law to raise any of the specific allegations of actionable negligence upon which a recovery was sought and that the trial court properly directed the verdict of the jury. Gulf, W. T. & P. Ry. Co. v. Wittnebert, 101 Tex. 368, 108 S.W. 150, 14 L.R.A.,N.S., 1227, 130 Am.St.Rep. 858, 16 Ann.Cas. 1153; Houston & T. C. Ry. Co. v. Harris, 103 Tex. 422, 128 S.W. 897; Colorado & S. Ry. Co. v. Rowe, Tex. Com.App., 238 S.W. 908; Kansas City, M. & O. Ry. v. Pysher, Tex.Civ.App., 195 S. W. 981; Gulf, C. & S. F. Ry. Co. v. Lakeside Irr. Co., Tex.Civ.App., 292 S.W. 939; Pass v. Gulf, C. & S. F. Ry. Co., Tex.Civ. App., 83 S.W.2d 729; Southern Ry. Co. v. Edwards, 5 Cir., 44 F.2d 526.

The judgment appealed from is affirmed.