United States Court of Appeals,

Fifth Circuit.

No. 93-1773.

Ruby Pauline HENDERSON, et al., Plaintiffs-Appellees,

v.

NORFOLK SOUTHERN CORPORATION, et al., Defendants,

Atchison, Topeka & Santa Fe Railway Company and Norfolk Southern Railway Company, Defendants-Appellants.

June 26, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before DAVIS and JONES, Circuit Judges, and CUMMINGS, District Judge.[1]

W. EUGENE DAVIS, Circuit Judge:

The defendants appeal an adverse judgment rendered in favor of the survivors of Roy Lee Henderson for both compensatory and punitive damages following a bench trial. Mr. Henderson died as a result of injuries he suffered when his tractor-trailer overturned. The district court concluded that the accident resulted from the combined negligence and gross negligence of the defendants. The central issue on appeal is whether the district court's findings are clearly erroneous. For the reasons stated below, we find no clear error except with respect to the district court's gross negligence findings. We therefore affirm the judgment except for the punitive damages award, which we vacate.

I.

---

[1]District Judge of the Northern District of Texas, sitting by designation.

Roy Lee Henderson worked as an independent truck driver hauling freight for various railroad companies as part of the so-called truck-railroad "piggy-back" system of transportation.[2] On the day of the accident, Henderson picked up a trailer loaded with crushed glass at the Atchison, Topeka & Santa Fe Railway Company ("Santa Fe") Terminal in Garland, Texas. Although the trailer was owned by Norfolk Southern Railway Company ("Norfolk Southern"), Santa Fe was operating it at the time.[3] After leaving the Santa Fe terminal, Mr. Henderson encountered a detour on Interstate Highway 35E requiring him to exit onto the frontage road. Shortly after Mr. Henderson exited the highway, the rear tandem wheels of the tractor-trailer left the paved portion of the frontage road, causing both the tractor and trailer to roll over. Mr. Henderson suffered multiple injuries, including a fracture of his right hip and contusions to his lungs. He suffered a fatal heart attack shortly after surgery on his hip.

Mr. Henderson's widow, Ruby Henderson, and Henderson's children subsequently brought a wrongful death action against Santa Fe and Norfolk Southern. The plaintiffs alleged that the defendants were negligent and grossly negligent in failing to

---

[2]The system is comprised of an interconnected network of truck and railroad shipping routes. Trucks typically transport cargo over short distances. For longer routes, however, truck trailers are "piggy-backed" on flat-bed railroad cars and shipped by rail for a portion of the trip.

[3]While each railroad company generally owns a fleet of truck trailers, the trailers are interchangeable. As with railroad cars, railroad companies freely operate trailers owned by other railroad companies. An independent trucking company typically owns and operates the tractor portion of the truck.

2

properly inspect and maintain the trailer involved in the accident. The plaintiffs' theory at trial was that the trailer's "slider sub-assembly," a key component in the trailer's suspension system, was defective. The plaintiffs contended that this defect prevented the rear tandem wheels of the trailer from "tracking" directly behind the tractor, a phenomena known as "off-tracking" or "dog-tracking."

The plaintiffs' lead expert, Richard Turner, testified that the rear tandem wheels of Henderson's trailer drifted off the paved portion of the road into a muddy ditch along the right side of the frontage road because the trailer was off-tracking over a foot to the right. As the trailer slipped into the ditch, both the tractor and trailer turned sideways and rolled over. Turner attributed the cause of the off-tracking to a defect in the trailer's slider sub-assembly. He concluded that the defendants were negligent because they failed to regularly inspect and maintain the slider sub-assembly according to the trailer manufacturer's maintenance recommendations.[4]

Turner based his explanation of the accident in part on the testimony of several eyewitnesses. Two truck drivers who were following Henderson's truck testified that they observed Henderson's trailer off-tracking by over a foot shortly before the accident. According to their testimony, Henderson slowed to

---

[4]The owner's manual issued by the trailer's manufacturer recommended maintenance every 20,000 miles or every four months. The defendants concede that they did not follow these recommendations at the time of the accident.

3

between 25-35 miles per hour after exiting the highway. They observed the trailer sliding into the ditch and the resulting rollover, and testified that the tractor's wheels never left the pavement before the rollover. Turner also based his conclusion on evidence of excessive wear on the trailer's right tires, which he testified is consistent with off-tracking.

The defendants challenged Turner's explanation of the accident at trial and argued that the accident occurred because Henderson was speeding when he exited the highway and negligently allowed the right wheels of the tractor-trailer to drift off the frontage road. The defendants' experts testified that Henderson allowed the tractor-trailer to drift off the frontage road and then overcompensated by turning sharply to the left in order to return the tractor-trailer to the frontage road. They testified that Henderson's maneuver caused the tractor-trailer to roll over because of his high rate of speed. These experts based their conclusions in part on the testimony of an eyewitness who testified that Henderson was traveling in excess of 50 miles per hour shortly before the accident. Finally, an engineer for the trailer manufacturer testified that his inspection of the trailer revealed no defects in the slider sub-assembly.

At the close of the bench trial, the district court found in favor of the plaintiffs. The court found that the accident was caused by off-tracking, and that the off-tracking resulted from a defect in the trailer's slider sub-assembly. The court thus rejected the defendants' theory that Henderson's speed and

4

inattentiveness caused the accident. The court concluded that the defendants were negligent for failing to properly inspect and maintain the trailer, and awarded the plaintiffs $1,250,000 in compensatory damages. The court further found that the defendants were grossly negligent and awarded the plaintiffs an additional $1,250,000 in punitive damages. The court then allocated the $2,500,000 in total damages 50% to Santa Fe and 50% to Norfolk Southern pursuant to Texas' comparative negligence statute. The defendants timely appealed.

## II.

### A.

Santa Fe and Norfolk Southern first challenge the district court's detailed findings relating to the cause of the accident and the defendants' failure to properly inspect and maintain the trailer. The defendants also challenge the district court's allocation of fault between Santa Fe and Norfolk Southern, and argue that the court should have allocated some of the fault to Henderson. We review the district court's factual findings for clear error. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).[5] We must

---

[5]Santa Fe alternatively argues that the district court erred in holding that it had a legal duty to inspect its trailers for latent defects. The existence of a legal duty is generally a question of law subject to *de novo* review. *See Hayes v. United States,* 899 F.2d 438, 443 (5th Cir.1990) (applying Texas law to state law claims). Because Santa Fe concedes that it has a duty to conduct a reasonable inspection for other than latent defects, *See* 11 Tex.Jur.3d, *Carriers* § 705 at 793 (1981) (citing *Gulf, W.T. & P.R. Co. v. Wittnebert,* 101 Tex. 368, 108 S.W. 150 (1908)), and because Judge Buchmeyer did not hold that the defect in this case was latent, we are convinced that Santa Fe's

5

accept the district court's factual findings if they are plausible when viewed in light of the entire record. *Price v. Austin Independent School Dist.,* 945 F.2d 1307, 1312 (5th Cir.1991). Ordinarily, "[w]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.*

After carefully reviewing the record, we conclude that the district court did not clearly err in finding that the defendants' negligence was the proximate cause of the accident. The district court found the plaintiffs' eyewitnesses more credible because the court believed that they were in the best position to observe the speed and movement of Henderson's tractor-trailer before the rollover. The court also found Turner's testimony more credible because it was the only expert testimony that was consistent with the testimony of the plaintiffs' eyewitnesses. A district court's assessment of the relative credibility of opposing expert witnesses is entitled to deference. *See Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.,* 898 F.2d 1071, 1077 (5th Cir.), *cert. denied,* 498 U.S. 900, 111 S.Ct. 256, 112 L.Ed.2d 214 (1990). Turner's testimony is consistent with the eyewitness accounts of

---

argument is essentially a *breach* of duty question subject to the clearly erroneous standard. *See Hayes,* 899 F.2d at 447 (whether an inspection is reasonable is a question of fact, not a question of law subject to *de novo* review). Thus, if a reasonable inspection would have uncovered the defect, the railroad breached its duty under Texas law.

the accident and the physical evidence of excessive tire-wear and damage to the slider sub-assembly. We conclude, therefore, that the district court did not clearly err in crediting Turner's testimony over the testimony of the defendants' experts.

We also agree that the district court did not clearly err in apportioning the compensatory damages 50% to Santa Fe and 50% to Norfolk Southern pursuant to Texas' comparative negligence statute, Texas Civil Practice & Remedies Code §§ 33.001 *et seq.*[6] As explained above, the district court was entitled to credit Turner's explanation of the accident, and Turner testified that neither Henderson's speed nor inattentiveness contributed to the accident. Turner also testified that the inspection and maintenance procedures of Santa Fe and Norfolk Southern were deficient. The district court was thus entitled to find that the defendants were equally responsible for failing to detect and correct the defect in the trailer's slider sub-assembly. Therefore, the district court did not clearly err in finding Henderson free of fault and allocating liability for the plaintiffs' compensatory damages 50% to Santa Fe and 50% to Norfolk Southern.

B.

Santa Fe and Norfolk Southern next argue that the district court clearly erred in finding them grossly negligent and awarding the plaintiffs punitive damages. The district court cited three

---

[6]The district court's allocation of fault under Texas' comparative negligence statute is a question of fact subject to the clearly erroneous standard. *See Spruiell v. Schlumberger Ltd.,* 809 S.W.2d 935, 940 (Tex.App.—Texarkana 1991, no writ).

principal grounds for its gross negligence finding.  First, the court found that the defendants ignored the trailer manufacturer's recommendation that the trailer be periodically inspected and maintained.  The court also credited Turner's testimony that the defendants' failure to inspect and maintain the slider sub-assembly created a "significant hazard."  Finally, the court found that the defendants ignored maintenance and inspection guidelines issued by the Association of American Railroads ("AAR") in 1987.[7]  According to the guidelines:

> Failure to check for proper locking pin engagement prior to driving away and failure to take proper preventative maintenance measures can lead to slider malfunction and possible accident, resulting in property damage, personal injury, or even death.

Based on these warnings and Turner's testimony, the court concluded that "both defendants exhibited a wont of care with respect to the inspection and maintenance of their respective trailers to the degree that it does show actual conscious indifference to the rights, welfare and safety of the persons affected by it, including cartage drivers like Mr. Henderson and the traveling public."

Under Texas law, a plaintiff may obtain punitive damages upon showing that the defendant was grossly negligent.  *See Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993).  The standard for proving gross negligence under Texas law is considerably more stringent than the "reasonable person" standard for ordinary negligence.  *Id.*  The Texas Supreme Court recently

_____

[7]The AAR's Interchange Rules Committee develops rules and standards governing the interchange of railroad cars and truck trailers.

formulated a two-prong requirement for proving gross negligence:

> (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others.

*Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994). Proof of both prongs is required before a plaintiff may recover punitive damages. *Id.* Based on our review of the record, we conclude that the plaintiffs' evidence is insufficient to satisfy *Moriel* 's first prong.

To satisfy *Moriel* 's first prong, the plaintiff must prove that the defendant's conduct involved an "extreme risk of harm." *Id.* Whether a defendant's conduct poses an extreme risk of harm requires consideration of both the magnitude of the potential harm to the plaintiff and the likelihood that serious harm will occur:

> As we said in *Wal-Mart,* the "extreme risk" prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather "the likelihood of serious injury to the plaintiff."

*Moriel,* 879 S.W.2d at 22 (quoting *Wal-Mart,* 868 S.W.2d at 326-327). The plaintiff must thus show that the defendant's conduct created a strong likelihood of serious harm, "such as death, grievous physical injury, or financial ruin." *Id.* at 24.

The record does not support the plaintiffs' contention that the defendants' conduct created an extreme risk. The record supports the district court's finding that off-tracking was the cause of the accident, and that the off-tracking resulted from a defect in the trailer's slider assembly. However, the record fails

9

to show that off-tracking poses an extreme risk of serious injury. Indeed, in testifying that Henderson was free of negligence despite his failure to notify anyone of the off-tracking, the plaintiffs' experts conceded that most truck drivers do not consider off-tracking to be particularly hazardous. Significantly, the record does not reflect any evidence of serious accidents resulting from off-tracking. *See Wal-Mart,* 868 S.W.2d at 327 (holding that a defect in the defendant's parking lot did not create an extreme risk of harm because the record revealed no evidence that the defect had caused any serious injuries before the plaintiff's accident).

The plaintiffs counter by arguing that off-tracking is too narrow a focus for evaluating the risk of the defendants' conduct. They contend that off-tracking is merely a symptom of the defendants' failure to properly inspect and maintain the trailer. They argue that punitive damages should be based on the defendants' failure to implement a system-wide inspection and maintenance program to ensure that their trailers are safe. Without such a program, the plaintiffs argue, the likelihood of a serious accident is significant given the volume of the defendants' traffic. To support their position, the plaintiffs point to the 1987 AAR maintenance guidelines. The plaintiffs contend that the warnings in these guidelines establish that the defendants' omissions posed significant risks beyond mere off-tracking.

The plaintiffs' attempt to broaden the scope of the defendants' omissions does not alter our analysis under *Moriel.*

However broadly the plaintiffs choose to characterize the defendants' omissions, *Moriel* requires them to prove not only that the defendants' omissions created a risk of serious harm, but also that the likelihood of the harm occurring was more than remote. 879 S.W.2d at 22. The record supports the plaintiffs' contention that a slider malfunction could have caused more severe problems than off-tracking. For example, the record suggests that a catastrophic disengagement of the slider sub-assembly could cause the trailer to separate from the tractor and that such an accident could result in serious injuries.

However, the plaintiffs' argument must ultimately fail because the record does not establish that such a catastrophic accident was likely to occur as a result of the defendants' failure to inspect and maintain their trailers. The record contains no evidence demonstrating that such accidents occur regularly. At most, the record suggests that the defendants' omissions might pose a remote possibility of serious injury. The Texas Supreme Court expressly rejected such a broad definition of gross negligence in *Wal-Mart,* 868 S.W.2d at 327. According to the court, the potential for serious injury is present for virtually all negligent conduct. Such a broad definition of "extreme risk" would thus "eliminate any meaningful distinction between negligence and gross negligence." *Id.* Therefore, the mere fact that the defendants' conduct creates the potential for serious injury is not sufficient to satisfy *Moriel* 's first prong.

We conclude that the plaintiffs failed to establish that the

defendants were grossly negligent under the standards set forth in *Moriel.* The district court thus clearly erred in finding the defendants grossly negligent and awarding the plaintiffs punitive damages.

## III.

For the reasons stated above, we AFFIRM the district court's judgment in all respects except for its award of punitive damages, which we VACATE. We REMAND this case to the district court for entry of judgment consistent with this opinion.

AFFIRMED in part; VACATED and REMANDED in part.